No. 38,072

The State of Kansas, *Appellee*, v. Sylvester E. Ragland, *Appellant.*

(226 P. 2d 251)

Opinion filed January 6, 1951.

*Geo. K. Melvin,* of Lawrence, argued the cause, and *A. B. Mitchell,* also of Lawrence, was with him on the briefs for the appellant.

*Robert B. Oyler,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *C. Harold Hughes,* assistant attorney general, and *Milton P. Allen,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kagey, J.: This is an appeal by defendant from a conviction upon an information charging burglary and larceny.

The facts may be stated as follows: Complainant Leta Ingalls testified that she and her husband Harry Ingalls ran a restaurant and beer tavern in Lawrence, Kansas, known as Duck's Sea Food Tavern. The Ingalls had been separated and living apart for one or two years prior to November 22, 1949; Mrs. Ingalls lived at 913 Connecticut street and did not know where her husband was staying, although they were operating the restaurant business daily as equal partners. About midnight November 22, 1949, one of the help at the tavern took Mrs. Ingalls from the tavern to her home at 913 Connecticut Street where she had been living in a two-story, seven-room house alone; formerly she had two roomers, but no one had lived with her within six months preceding this date; on arriving home she went directly to her upstairs bedroom, placed her pocketbook under the bed, and retired for the night; after falling asleep, she was awakened sometime during the night thinking she heard a creak in the floor, but did not turn on the light and again fell asleep; the next morning she awoke, went to

the downstairs bathroom and found her purse on the clothes hamper there; went upstairs to check her money and found that it had been stolen; she immediately called the police and when they arrived, advised them that $4,000 had been taken from her; she thought the information later filed by the county attorney was correct; she went down to the police station with her husband and heard him report to police that the loss was $400; she had told them it was $4,000, but after she checked she "found out"; she made a claim for repayment on a burglary insurance policy for $250, which was all the insurance she had. She further testified that she had $2,200 in currency in one billfold in her purse, consisting of one fifty dollar bill and the rest in crisp, rather new, twenty-dollar bills, all of which was her own personal money; she also had $1,200 in currency in her purse consisting of tens, fives and one-dollar bills (the number of each denomination not mentioned) and also $60 to $100 in silver, all of which belonged to the business or partnership, which she handled as cashier; that she had been accumulating the $2,200 over a period of ten years, had been carrying it around in her pocketbook off and on during that time, and had been so carrying it for more than a year last past; that she had intended to buy bonds; that she had a personal bank account, and there was no particular reason for carrying the money around in her purse; she did not think her husband had a bank account.

Police officers testified that when they went to the home of Mrs. Ingalls on the morning of November 22, 1949, they found the night lock on the front door had been jimmied and the door pried from its hinges and that it would not stay closed; they found an "El Roi Tan" cigar band on the living room floor four or five feet from the front door; the officers further testified that on November 26, 1949, they saw defendant at a used car lot in Lawrence and later arrested him in the east part of the city while driving with his family in a 1933 Chevrolet automobile; they took defendant to the police station and made a search of defendant's car finding, among other things, children's clothing, a revolver, an automatic pistol, and under the dash of the automobile on top of the radio they found a money bag containing about $1,200 in currency and silver consisting of one $50 bill and 59 twenty-dollar bills; that defendant stated he had won $4,000 gambling from Fred Holloway; a search of the purse of defendant's wife at the police station revealed 22 ten-dollar bills, 10 twenty-dollar bills, and 45 five-dollar bills.

Mr. Barncord, a used car dealer, testified that about six weeks prior to November 22, 1949, the defendant purchased a 1933 Chevrolet from him for $85 with a down payment of $35, leaving a balance due of $50; that defendant failed to make his weekly payments; that on November 26, 1949, defendant talked to Mr. Barncord about buying a 1948 Buick; defendant gave Mr. Barncord $650 in five, ten and twenty-dollar bills; the Buick was priced at $1,850, but defendant could not get the balance financed and the deal was terminated and the money returned. Barncord did prevail upon the defendant to pay the balance due on the Chevrolet by compromising for $40.

A used car dealer from Emporia, Kansas, testified that he sold defendant a 1942 Buick about fifteen or eighteen months before November 22, 1949, for $1,450, and took a chattel mortgage on the car; that during the fall of 1949 he had seen defendant four or five times about the defaulted payments and that the balance due was $272.65; defendant's brother gave a check for the balance which was never honored by the bank; that he finally received the balance due from a used car dealer in Topeka, Kansas, shortly before November 22, 1949.

Fred Holloway, owner and operator of a pool hall in Lawrence, testified that he had known defendant about three years; had played cards with defendant two or three times a week and had lost $400 or $500 to defendant on different occasions but that he had not lost any money to him within three or four months prior to November 22; that defendant smoked several kinds of cigars including Roi Tans.

At the conclusion of the state's evidence, defendant interposed a demurrer on the ground that the state failed to produce any evidence on which the jury could base a verdict of guilty, and also moved the court to discharge defendant for the same reason. Both the demurrer and the motion to discharge were by the court overruled.

The only evidence offered by the defendant was the testimony of a Mr. Parker who stated that on August 17, 1949, defendant made a deposit of $100 on a new Buick automobile; that prior to October 28, 1949, defendant talked to him about delivery on an automobile; that he tried to take a credit statement from defendant and learned defendant had no job of any kind and that he could not finance the automobile; that defendant threw some money in a

clip on the desk, but he had no idea how much it was; that he refunded the $100 deposit to defendant.

At the close of defendant's evidence, he moved for a directed verdict of not guilty, which motion was by the court overruled.

Defendant brings the case here and assigns as error among other specifications, the court's ruling on his demurrer and motion for discharge at the close of the state's case. Defendant predicates his argument on the fact that there was no direct evidence against the defendant; that the entire case of the state was based on circumstantial evidence; and the circumstances were not sufficient to support the verdict.

At the outset it is agreed by both the state and the defendant that the evidence upon which the conviction was had is entirely circumstantial. The universal rule with reference to conviction on circumstantial evidence is that the circumstances must be so strong that they exclude every reasonable hypothesis except that of the guilt of the defendant. (*State v. Robinson,* 158 Kan. 287, 147 P. 2d 374; *State v. Sweizewski,* 73 Kan. 733, 85 Pac. 800; *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174.) This court recognizes the rule laid down in *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; Syll. ¶ 4 of which is as follows:

"When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt, following *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174."

It follows from the above that it devolves upon this court to determine from the evidence whether there was any basis in the evidence for a reasonable inference of guilt. In connection with this statement, we are compelled to the belief that there was no evidence upon which an inference of guilt could be based. In support thereof, we notice briefly certain pertinent parts of the evidence presented by counsel for both parties in this court.

To begin with, it is interesting to note that the information filed charged the defendant with breaking and entering in the nighttime the dwelling of the complaining witness, Leta Ingalls, at 913 Connecticut street in Lawrence, Douglas county, Kansas, and with stealing, taking and carrying away therefrom the sum of $3,387 in money. No charge was made that the defendant took bills or

currency of any particular denomination. Testimony of the complaining witness in connection with this charge was that she told the police after the alleged entering and stealing occurred on November 22, 1949, that $4,000, mostly in bills, had been stolen. The testimony fails to show that any statement was made at that time about the denomination of the bills. There is some doubt after an examination of the evidence that as much as $3,387 had ever been stolen from her. From the counter abstract furnished by the state, she testified on cross examination as follows:

"Q. Were you there when your husband reported to the police that the loss was $400.00?
"A. No, not at the house.
"Q. Were you down at the station when he so reported that?
"A. Yes.
"Q. You heard him tell them it was $400.00?
"A. Yes.
"Q. You had told them it was $4000.00?
"A. At first but after I checked I found out. We had other money, too."

The purport of the above testimony is of no immediate concern, however, because as we read the record, there was no identification of the money taken from the defendant as being the stolen money, the only testimony in reference thereto by the complaining witness, as gleaned from the counter abstract, being as follows:

"Q. Would you examine Exhibits 4 and 6, Mrs. Ingalls, and tell us if these twenties are new?
"A. Just about like I had. I wouldn't say they are brand new, but they are crisp twenties, all of them."

In view of the above testimony, it is doubtful that there could be any inference of guilt by reason of identity of the money.

Defendant's wife Dolly worked for the complaining witness at Duck's Sea Food Tavern and was in the home of the complaining witness once (she thinks) about one and one-half years prior to November 22, 1949, to buy some second hand clothes, and from this fact it is inferred that defendant might have known his way around in the house; further that defendant might have known that the complaining witness carried a large sum of money in her pocketbook, although the testimony fails to disclose how defendant's wife could have known about it. The testimony merely showed that Mrs. Ragland worked in the tavern and had been in the home a year and a half before and that is all; purely an inference on an inference.

In connection with the amount of money allegedly purloined by the defendant, the state attempts to attach great significance to the fact that defendant stated when he was arrested that he had won about $4,000. We fail to see how an inference could be drawn from this statement that defendant had stolen the money of the complaining witness when she herself had made no claim that money in the amount of $4,000 was stolen from her.

Significance is attached to the money clips and money bag found in defendant's car. No claim is made that any of the money allegedly lost by the complaining witness was affixed with money clips, nor that complaining witness had her funds in a money bag like the one found in defendant's car.

The state attempts to infer that the defendant was in flight when apprehended by the officers by reason of the fact that when defendant was in the used car lot, Barncord, the owner, saw the police watching defendant and therefore defendant could have seen the police watching him, although there is no evidence any place in the record that defendant did see the police watching him. This was on November 26, four days after the alleged robbery; and certainly no inference, in the absence of direct testimony, could be drawn that defendant was in flight when the police arrested him.

An inference is attempted to be drawn that because an El Roi Tan cigar band was found in the house of complaining witness after the alleged robbery; further, because friends of the defendant brought him cigars at the jail after he was arrested among which were El Roi Tans; and because Holloway, the person from whom defendant had won four or five hundred dollars on occasions, had seen the defendant smoke El Roi Tans; therefore the El Roi Tan cigar band found in the burglarized premises must have been left there by the defendant. This is another illustration of basing an inference on an inference. In the case of *McKenzie v. New York Life Ins. Co.*, 153 Kan. 439, 112 P. 2d 86, this court said:

"Presumptions or inferences based upon presumptions or inferences are insufficient to meet a burden of proof resting upon a pleader." (Syl. ¶ 2.)

See, also, *Schmidt v. Twin City State Bank*, 151 Kan. 667, 100 P. 2d 652; 31 C. J. S., Evidence, § 116b and cases cited in note 10. While the cited cases are civil cases, the rule is the same as to criminal cases, particularly in view of the fact that the burden of proof in a criminal case is greater.

Counsel for the state assert that there are other circumstances

from which inferences of commission of the crime charged may be drawn, but from our examination of the record, they do not dignify a discussion.

Some reference is made in the record and in the argument about a petition for a writ of habeas corpus filed by the defendant and Dolly Ragland, his wife, upon the evidence as disclosed in the record now before this court; and that Dolly Ragland was discharged upon the petition. That case was apparently another case in which no appeal was taken from the court's decision, and is therefore not before us.

The judgment is reversed with directions to discharge the defendant.

HARVEY, C. J., dissents.