No. 38,441

THE STATE OF KANSAS, *Appellee*, v. SYLVESTER E. RAGLAND, *Appellant.*

(233 P. 2d 740)

July 3, 1951.

Opinion filed

*A. B. Mitchell,* of Lawrence, argued the cause, and *George K. Melvin,* of Lawrence was with him on the briefs for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a prosecution for burglary and larceny. The defendant was convicted. On appeal we reversed for lack of evidence and ordered the defendant discharged. (See *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251.) During the trial $1,893.40 in currency was introduced as evidence against Ragland. Part of it had been taken by the arresting officers from a car in which he was riding with his wife when arrested and part of it from his wife's person. No currency was found on his person. There was no search warrant. The officers of the city of Lawrence who arrested Ragland and seized the money turned it over to the state. The county attorney introduced it as evidence at the trial. It at this time is in the hands of the clerk of the district court. This appeal is from an order of the district court ruling on motions by Ragland and by the complaining witness each, to order the money turned over to them, after our decision was filed. The appeal is by Ragland. We have a brief for him. There is no brief nor was there any appearance in this appeal for the complaining witness nor for the clerk of the court who held the currency nor for the state.

Ragland filed a motion as follows:

"Comes now the Defendant by his attorneys, George K. Melvin and A. B. Mitchell, and respectfully moves that Journal Entry of Judgment be filed in accordance with the Mandate of the Supreme Court of the State of Kansas and for the further order that all moneys now held by any person or persons on behalf of the State of Kansas which were taken from the Defendant Sylvester E. Ragland and his wife, Dolly Ragland, be released and turned over to the attorneys for the Defendant."

The motion of the complaining witness was as follows:

"YOU ARE HEREBY NOTIFIED, that I, Leta Ingalls, claim as my sole and separate property all the money now in your hands, as Clerk of the District Court of Douglas County, Kansas, said money including one fifty dollar bill, many twenty dollar bills and other monies in the total sum of approximately $1944.47, which was introduced into evidence in the above entitled cause by the Plaintiff and I do hereby request and demand that you turn said money over to me."

The trial court heard these motions and made the following order:

"Now on this 10th day of March, 1951, the motion of the Defendant, Sylvester E. Ragland, and the motion of Leta Ingalls, the complaining witness, each for an order of the District Court that the exhibit of money in the

amount of $1893.40 now held by the Clerk of the District Court be given to the moving party, comes on for hearing and the Defendant Sylvester E. Ragland, being present by his attorneys, George K. Melvin and A. B. Mitchell, and the complaining witness being present by her attorney John J. Riling, said motions are duly presented and argued to the Court.

"The Court after hearing argument of the parties finds that the motions of the Defendant, Sylvester E. Ragland, and of Leta Ingalls, should be denied and that the exhibit to-wit, the money hereinbefore described should, in the absence of some appropriate action by someone, within twenty (20) days, be turned over by the Clerk of the District Court to the party who introduced it in evidence upon the trial of this cause in this Disrict Court.

"IT IS THEREFORE BY THE COURT ORDERED that if no appropriate action is filed by someone concerning the exhibit to-wit, the $1893.40 now held by the Clerk of the District Court, within twenty (20) days from this date March 10th, 1951, the Clerk shall give said money to the party who introduced it in evidence in this cause."

It will be noted, the trial court denied both motions and ordered the currency described, in the absence of some appropriate action by someone, to be turned over to the party who introduced it in evidence. On inquiry during the oral argument we learned that the practical effect of this order would be to turn the money over to the county attorney of Douglas county since that official introduced it in evidence. Ragland has appealed from that order. There appears no basis whatever in law for the order of the trial court that the currency be delivered to the county attorney. The seizure of the currency was made without a search warrant; however, no point was made of that at the trial. Officers when making an arrest of one whom they have reasonable grounds to suspect of larceny may seize and hold for evidence property they find in the possession of the person arrested, which they have reasonable grounds for believing was stolen. (See 6 C. J. S. 620.)

At the submission of this appeal there was some thought that the order of the trial court was not appealable and the appeal should be dismissed. G. S. 1949, 60-3303, provides in part:

"A final order which may be vacated, modified or reversed . . . is an order affecting a substantial right in an action."

We have concluded that since the defendant and complaining witness are both claiming this currency and since the order of the trial court ordered it paid to a public official, who did not claim it himself and who no one claimed was entitled to it, it was conceivable that it might thereby be lost to whomever was entitled to it and the order was of sufficient finality so that in the interest of substantial justice we should take jurisdiction.

The case against defendant was based on circumstantial evidence. Complaining witness testified that $2,200 in currency was taken from her bedroom while she slept. The fact that defendant and his wife were in possession of such a large amount of currency, $1,-893.40, was urged as a circumstance tending along with other circumstances to establish his guilt. Thus it will be seen it was proper for the arresting officer to hold the currency seized at the time of his arrest and that it was competent evidence against him on his trial for burglary and larceny.

We may state the facts thus—the currency came into the hands of the arresting officers as an incident of a lawful arrest; they delivered it to the sheriff or county attorney as was their duty; the county attorney introduced it in evidence as was his duty; the currency then came into the hands of the clerk of the district court, which officer is holding it awaiting an order as to its final disposition.

Appellant concedes that anyone claiming this currency might file an action in replevin and prove paramount title if it existed in him. This is correct. (See 54 C. J. 435, also *Lynch v. St. John,* 8 Daly [N. Y.] 142.) He argues, however, that such title could not be proved by the complaining witness here because the question of its ownership is *res judicata* on account of the final judgment in the criminal prosecution.

The larceny with which defendant was charged was both a civil and a criminal wrong. (See *Smith v. McCarthy,* 39 Kan. 308, 18 Pac. 204; also *Lipscomb v. Bank,* 66 Kan. 243, 71 Pac. 583.) Merger of causes of action is a phase of *res judicata.* (See 1 C. J. S. 994, also 50 C. J. S. 20.) At the early common law if an act constituted a felony the private wrong and injury were so merged in the public wrong that there was no private cause of action. (See 1 C. J. S. 994.) This was never the rule in Kansas, however, because in 1859 our legislature enacted Section 9, Chapter 25, of the Laws of 1859. The same section is now G. S. 1949, 60-109, and provides as follows:

"Where the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other."

A similar statute is in effect in most of the states.

This is the rule now generally even though G. S. 1949, 60-109, had not been enacted. In *Stone v. United States,* 167 U. S. 178, Stone was sued by the United States to recover the value of timber alleged to have been cut from public lands. He had been tried and acquitted of the same charge and pleaded this acquittal as a bar to

civil liability. After an extended discussion of the authorities, the court said:

"It cannot be said that any fact was conclusively established in the criminal case, except that the defendant was not guilty of the public offense with which he was charged. We cannot agree that the failure or inability of the United States to prove in the criminal case that the defendant had been guilty of a crime, either forfeited its right of property in the timber or its right in this civil action, upon a preponderance of proof, to recover the value of such property."

(See, also, *Chantangco v. Abaroa,* 218 U. S. 476.) There the court held:

"The general rule of the common law is that a judgment in a criminal proceeding cannot be read in evidence in a civil action to establish any fact there determined. . . ."

We need only apply the rules on *res judicata* with reference to identity of parties, of causes of action, and of issues to reach a conclusion in this case.

The state had charged the defendant with both burglary and larceny. The parties to the criminal action were the state on one side and the defendant on the other. In the civil action there would be the woman who claimed the currency was hers on one side, and the clerk of the district court and defendant on the other. The issue in the criminal case was—Did the defendant break into complaining witness' house and steal her money? The issue in a civil action would be—Was the currency taken from defendant's car and from his wife's person the identical currency that was taken from the complaining witness? The state had in the criminal action the burden of establishing defendant's guilt beyond a reasonable doubt.

The rules with reference to circumstantial evidence applied.

In a civil action to determine the ownership of this currency the ownership need only be established by a preponderance of the evidence.

G. S. 1949, 60-109, and the rule referred to, are phases of the development of the law to correct the evil following the rule that stolen property belonged to the sovereign. Prior to 1529 the owner of stolen property was compelled to resort to what was called an "Appeal Of Robbery," if after conviction of the thief he wished to to recover his property.

The statutes of *21 Henry 8,* Ch. 11, provided for the issuance by the court in which the thief was convicted of a writ of restitution after the conviction. The right of the owner to recover property stolen from him was made dependent on his prosecuting the thief.

Before too long the courts no longer went to the trouble of issuing the writ but the end was attained by the trial court ordering the property delivered to the owner after conviction. Such is the procedure the complaining witness adopted here and if we had affirmed the conviction our statute would have provided for it. (See G. S. 1949, 62-1810.) That section provides as follows:

"If such property shall not have been delivered to the owner, the court before which a conviction shall be had for the stealing or embezzling thereof may, on proof of the ownership of any person, order the same to be restored to him on payment of the expenses incurred in the preservation thereof."

The above section was enacted in 1855, about the time G. S. 1949, 60-109, was enacted. (See *Terr. Statutes of* 1855, Ch. 129, Art. 9, Sec. 9.)

Since in this case the defendant charged with the larceny was finally acquitted, G. S. 1949, 62-1810, affords us no guide. There is no statute authorizing the court before which the defendant was finally acquitted to restore to him the property alleged to have been stolen. The general rule is that in the absence of a statute permitting the trial court to determine the ownership of stolen property even in the case of an acquittal, the acquittal of the defendant does not of itself establish the ownership of the goods. (See 36 C. J. 951; also *Winter v. Bancks and another,* 84 L. T. Rep. N. S. 504, Kings Bench.)

In an action such as that described, the complaining witness claiming the currency was stolen from her house by defendant would have the burden of proving by a preponderance of the evidence that this identical currency was stolen, that is, that the currency found on the person of defendant's wife and in defendant's car and now in the hands of the clerk of the court was the identical currency that was stolen from her.

The currency was taken by the officers from the possession of defendant. About that there can be no dispute. In case the complaining witness fails to establish that it is the currency that was taken from her, paramount title to it is in defendant. (See 24 C. J. S. 1259.)

It follows the judgment of the trial court must be modified. Unless the complaining witness begins an appropriate action to establish her title to this specific currency within ten days after the mandate in this appeal is spread, then the trial court is directed to deliver it to defendant. In case she brings the action and fails, the

trial court is directed to deliver it to defendant when the judgment has become final. The clerk of the district court is directed to retain custody of the currency to abide the result.

SMITH, J. (dissenting): I am unable to concur in the majority opinion. I believe we should have ordered the trial court to direct the clerk of the court to forthwith deliver this currency to the defendant. I think it is so unusual for the public officials to do otherwise after one accused of theft has been acquitted that we have failed to grasp the background of similar situations. As I examine the authorities from the time of the "Appeal of Robbery" down through the statutes providing for the Writ of Restitution up to the enactment of our statutes, Chap. 129, Art. 9, Sec. 9, of the Laws of 1855 the attention of the courts was directed at perfecting the right of the owner of property to have it restored to him when the thief had been convicted. The reason in my mind the emphasis was placed on this phase of the law is, that it never or seldom occurred to any official not to return property to one charged with stealing it where he had been acquitted. If one examines the situation realistically this conclusion seems inescapable. It can be stated this way—a citizen on the street or in his home may be arrested with property in his possession. It may be taken from him and held by officers if there is a reason for believing it was stolen by him. I have no quarrel with that. It is all part of the rights thrown around the citizen in the preservation of his property rights, but how about preserving the rights of a man who is arrested? He is given a trial by a jury as the constitution provides. If he is acquitted, why on earth should not this property he is accused of stealing be returned to him? It was taken without a writ, without a bond, without anything except the officer's reasonable belief that it might be stolen.

I do not have a quarrel with the holdings that a civil wrong and a criminal wrong are committed whenever property is stolen. Neither do I wish to hold that the civil right is merged in the criminal right. I do wish to hold that the process of arrest upon reasonable belief of guilt does not give the person who has a civil wrong to redress the right to use the criminal process as a means of making his civil rights more effectual. That is exactly what the holding of this court in this appeal does.

Ragland was arrested many months ago. His property was taken from his possession and from the possession of his wife without any

writ, with nothing more than the officer's reasonable belief that he had stolen it. It was used as evidence. I do not have any quarrel with that. But until the complaining witness brings her action and it is completed this seizure of the currency without any writ, no attachment process, no garnishment, no replevin bond, nothing except the power of the state, is used to enable her to collect her debt if she ever gets a judgment against Ragland.

The statute provides that if Ragland had been convicted the court in which he was convicted should restore the money to her. I claim the same court has an inherent right to restore it to the acquitted defendant. (See Hale's Pleas Of The Crown, Vol. II, 1st Am. Ed., p. 151.) Chapter 18 of that work has to do with search warrants. Actually our statutes, G. S. 1949, 62-1801 to 62-1813, are almost a paraphrasing of Sir Matthew Hale's work above cited. Section 3 of that chapter is of especial interest. It provides:

"Now upon the return of this warrant executed, the justice, before whom it is returned, hath these things to do:

"1. As touching the goods brought before him, if it appears they were not stolen, they are to be restored to the possessor; if it appears they were stolen, they are not to be delivered to the proprietor, but deposited in the hand of the sheriff or constable, to the end the party robbed may proceed by indicting and convicting the offender to have restitution.

"2. As touching the party, that had the custody of the goods. If they were not stolen then he is to be discharged. . . ."

There are some more respectable authorities for this holding.

*Welch v. Gleason*, 28 S. Car. 247, 5 S. E. 599, is a case where defendant had been acquitted of the theft of money. The currency had been given to the trial justice and after the acquittal he refused to deliver it to the acquitted defendant. He brought an action against the justice to recover possession of it. Some procedural questions receive the attention of the court, but in dealing with the question with which we are concerned the court said:

"It seems to us, therefore, that the case, as presented by the testimony, amounts simply to this, that the plaintiff was arrested under a charge of larceny, and when carried before the defendant, as a trial justice, money found in his possession was taken from him and delivered to the trial justice; but when the charge, upon investigation, proved to be groundless and he was discharged from custody, he was clearly entitled to a return of the money. The defendant doubtless acted in good faith, under an honest but mistaken belief as to his duty in the premises, and this is manifestly the view taken by the Circuit Judge, from the fact that he has relieved him from the payment of costs. But while this is the case, he is nevertheless liable to the plaintiff for the amount of the money taken from him, even though it was done with the best of motives."

The case of *State v. Williams*, 61 Iowa 517, 16 N. W. 586, is a case on almost all fours with this one. There defendant had been acquitted of the theft of the money. The complaining witness filed a motion in the criminal case to have the money returned to him. The court called a jury, which found in favor of the complaining witness. The court said:

"If the defendant had been convicted of stealing the money in question, the duty of the district court would have been clear. Section 4657 of the Code provides that if the 'property stolen or embezzled has not been delivered to the owner, the court before which the conviction was had may, on proof of his title, order its restoration.' In such case, the conviction would be sufficient evidence that the money did not belong to the defendant. The only question for the court would be as to whether it belonged to the person from whom it was alleged to have been stolen. The court, we presume, might properly enough proceed to determine such question in a summary way. No third person would be affected by the finding.

"But we have a case where the defendant was acquitted. We must presume, then, that the money was not stolen. For such a case the statute seems to make no provision. The money having been forcibly taken under a search warrant from a person presumptively innocent, it would seem to follow as a matter of course that the person holding the money in custody should deliver it to the person from whom it had been thus taken."

In *People Ex Rel Simpson Co. v. Kempner*, 208 N. Y. 16, 101 N. E. 794, the court considered the claim of a pawn broker to a ring that had been taken from him under authority of a search warrant. The woman accused of having stolen it was never tried because she was then in custody serving a sentence for another offense. The pawn broker claimed to have a lien on the ring and sought to have his title adjudicated in a civil action. The examining magistrate was about to adjudicate the title in the criminal case. The appellate division granted a writ of prohibition and on final hearing said:

"Where property voluntarily or by aid of a search warrant comes into the possession of a magistrate or court from the person or possession of one charged with crime, and such person is thereafter convicted of having stolen the property that is so in the possession of the magistrate or court from the person claiming to be the owner thereof, and there are no third persons claiming such property, it has doubtless been the practice, so long as there is any record of it, to order the property delivered to the person, who, as appears by the testimony taken upon the trial, is the owner thereof. Such an order is analogous to the obsolute writ of restitution. When, however, the property has been taken by a search warrant from the possession of a third person, and there is a controversy between the person from whom it is claimed that the property was stolen and the person from whom the possession of the property was taken by the search warrant, as to which is entitled to the possession thereof, a question is

presented that cannot be determined upon a criminal process. It is a matter wholly between the contending parties, and of no direct concern in the state. It must be determined in a civil action, in which the parties are by Constitution entitled to notice and a hearing, and, if demanded, to a trial of the issues by jury."

This opinion is of interest to us here because it holds that where the person from whom the officers took the property was convicted and there is a dispute between the alleged thief and the owner claiming it, as to title to it, the matter should be adjudicated following the testimony in the criminal case, as analogous to the ancient writ of restitution, while where the dispute is between the owner and a third party it should be adjudicated in a civil action.

The books are full of cases holding that temporary retention of chattels alleged to have been stolen is within the police power and pending completion of a prosecution for the stealing, the court before whom the accused is tried should make no order for its return to him but should relegate him to civil remedies, if any. (See 24 C. J. S. 1258.) Emphasis should be placed on the holding this power is only for a temporary retention. Surely is this true and once the prosecution is completed and an acquittal has resulted the accused from whom the money or other property was seized should have it back and thus be put in as good a situation as when he was arrested and his property seized. It must be remembered he does not ask here to have the title to this currency tried. There is no dispute about the title. It was in him when he was arrested and nothing has happened to change it. He merely asks to be put in the condition he was in when he was arrested.

I cannot escape the conviction that the exceptional amount of money involved here and the fact that this defendant is a poor man has caused the officers to go far beyond the scope of their duty with reference to the retention of this money. The result is to harass the defendant and cause him unnecessary expense even though he has stood at the bar of justice and been ordered discharged.

WEDELL and WERTZ, JJ., concur in the dissent.