THE STATE OF KANSAS V. A. J. SNYDER.

1. JURY TRIALS, *Should be Inviolate; Duty of Court.* It is the duty of the courts to enforce a rigid and vigilant observance to the provisions of the statutes designed to preserve inviolate the right of trial by jury, and the purity of such trials.

2. CRIMINAL LAW; *Deliberation of Jury; Presence of Officer.* After a verdict of guilty had been returned by a jury against an accused for the offense of obtaining by false pretenses the signature of a firm to a check of $850, and in support of a motion for a new trial affidavits were filed proving that the bailiff who had the jury in charge, and who had testified on the trial on the part of the prosecution to material facts against the prisoner, was with the jury in the jury-room the greater part of the time while they were deliberating on their verdict, and the state made no explanation of the presence of the officer with the jury in their consultations together, nor any showing that the rights of the prisoner were not prejudiced by the acts and conduct of such officer and witness, *held,* that the verdict should have been set aside and a new trial granted.

*Appeal from Linn District Court.*

INFORMATION, charging that *Snyder,* on the 28th of November 1876, at Linn county, designedly, feloniously, and with intent to cheat and defraud the firm of Hood & Kincaids, by means of certain false pretenses and representations, obtained the signature of said firm to a certain check or draft for $850, which he took into his possession and negotiated, obtaining thereon the sum of $850 in money. Plea, not guilty. Trial at the August Term 1877. The jury returned a verdict of guilty, and *Snyder* was sentenced to confinement in the state penitentiary for a term of years. From this judgment and sentence *Snyder* appeals to this court.

*James D. Snoddy,* for appellant:

1. The offense of obtaining money or property by a false pretense, it would seem reasonable to believe, could only be committed when a false pretense was the moving cause which induced the person cheated to part with his money or property.

Gen. Stat., page 335, § 94; *The State v. Green*, 7 Wis. 676; *The State v. Kube*, 20 Wis. 217; *People v. Haynes*, 14 Wend. 564.  Here there was no deception, no fraud, and Hood did not rely upon the statements of Snyder, but upon the letter of credit and telegram of Painter & Son, copied in *In re Snyder*, 17 Kas. 545, 546.

2. The jury should have refused to deliberate in the presence of the bailiff, and especially of the ·bailiff who was a witness in the case; and the presence of such bailiff in the jury-room is misconduct, for which the verdict should have been set aside.

*Biddle & Blue*, for The State:

1. The law governing this case on the trial, and in the instructions given to the jury, is clearly stated by this court in the *habeas corpus case, In re Snyder*, 17 Kas. 542; and was followed by the trial court.

2. Nothing is more common than for an officer of the court to be sworn as a witness; and his being a witness, as in this case, does not prevent him from doing his duty as bailiff.  Exception to this should have been taken when the bailiff was sworn.

The opinion of the court was delivered by

HORTON, C. J.: After the appellant, A. J. Snyder, was discharged by this court in the case of *In re Snyder*, reported in 17 Kas. 542, he was rearrested for having obtained by false pretenses, on November 28th 1876, the signature of the firm of Messrs. Hood & Kincaids to a check of $850, and having also obtained by like pretenses the possession of the check after it had been certified.  Under the information subsequently filed against him, he was convicted on one of the counts, and his punishment assessed at three years' confinement at hard labor in the penitentiary.  He has assigned a number of errors committed by the district court on his trial, only one of which it is necessary for us to notice in this opinion.  This relates to the presence of the bailiff of the

jury in their room during their deliberations. The facts are, that one H. H. McGlothlin was a material witness for the state, and testified on the trial that he had a conversation with Snyder, at the depot at Kansas City, Mo., about December 1876, concerning the $3,850 obtained by Snyder, and that Snyder, in talking about the matter, stated that D. A. Painter & Son owed him $3,900 and this was one way, or the only way, he had to get even with them. After the jury had been charged by the court, this witness was appointed the bailiff of the jury.

It appeared from the affidavits filed on the part of the appellant, on his motion for a new trial before the district court, that the jury retired for deliberation a little after twelve o'clock on the morning of the 1st of August 1877, and were out several hours before they agreed upon a verdict; that said McGlothlin remained in the room with the jury during their deliberations and their discussion of the case the greater portion of the time they were absent from the court-room, and was actually present with them while they were considering what their verdict should be. No counter-affidavits were filed, and all the statements contained in these affidavits we may assume to be true. We suppose it must be conceded, that the continued presence of the officer in the jury-room during their deliberations was an irregularity; and the question is presented, whether such conduct will render the verdict void, and require it set aside, in the absence of all explanation of the reasons of the officer with the jury, and in the absence of all showing whether the accused was prejudiced. It was held in *The State v. Mulkins,* 18 Kas. 16, that where the court allows the jury to separate, and fails to admonish them as required by law, it will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced during said separation, because of such failure, and the burden of proving that the rights of the defendant were not so prejudiced rests upon the prosecution. In *Madden v. The State,* 1 Kas. 340, it was said: "It is of the utmost importance that triers, who

pass upon the lives and liberties of men, should so act that no possible suspicion can attach to them of having been in a position where improper influences, prejudicial to the accused, or in his favor, may have operated on their minds. Where the opportunity for such influences is afforded, if the verdict is against the accused, he is entitled to the presumption that the irregularity has been prejudicial to him, and it is incumbent on the state to show that no such injury could have occurred by reason of the irregularity."

In view of the law thus stated, and the provision of the criminal code, that the court shall grant a new trial "when the verdict has been decided by means other than a fair expression of opinion on the part of all the jurors," if the irregularity of the officer could have affected the rights of the prisoner injuriously, we are required to undo what was. improperly done. Can we say it is no harm for a bailiff, who has been produced on the part of the state in a criminal action to testify to material facts against an accused, to be with the jury in their deliberations? This certainly would be a very unsafe rule, if answered in the affirmative. If the bailiff in this very case had been the prosecuting witness, John Hood, and he had acted as McGlothlin did, no argument would be needed to show the gross impropriety of sanctioning such proceedings; and the fact that the bailiff only testified to a few material matters instead of many, as Hood did, lessens, perhaps, the probabilities of improper influences being used toward the jury, but does not convince us that his presence might not have been prejudicial. The actual presence of the bailiff was not only unfair to free and private deliberation by the jury, but was a constant menace to the jurors who might have wished to question the facts testified to by the witness. Would not his presence have been likely to have deterred discussion upon his own evidence, and thereby prevented a fair expression of opinion on the part of the jurors? The very fact that this witness gave evidence against the prisoner at the instance of the prosecution, might have induced the belief, in the minds of some of the

jurors, that he believed the defendant guilty, and was favorable to his conviction; and with this idea some of them might have hesitated to express themselves as freely in his presence as if allowed to consult and converse in his absence. The officer's presence, to use the mildest language, under the circumstances, was a restraint upon the deliberations of the jury, entirely at variance with the seclusion and privacy which the wise provisions of the law attempt and intend to secure to its members, when they have retired to agree upon a verdict. Such restraint should not be imposed upon jurors. In this case there seems to be no excuse therefor, and no good reason given why it took place. We cannot be too strict in guarding trials by jury from improper influences, and in compelling a rigid and vigilant observance of all the provisions of the statutes tending to preserve the purity of such trials. The verdict, when returned into court, must command entire confidence. It must be secure from all improper bias, and even from the suspicion of improper bias.

We are clearly of opinion that the law does not sanction a verdict surrounded with the opportunities for improper influences as this was, and that the district court erred in refusing to grant a new trial. It is therefore ordered that the verdict of the jury and the sentence and judgment of the court be annulled and avoided, and that the case be remanded for a new trial. It is further directed that the appellant be returned from the state penitentiary, and delivered over to the jailer of Linn county, there to abide the order of the district court of said county.

All the Justices concurring.

NOTE.—Pursuant to the order of the court, stated in the foregoing opinion, *Snyder* was returned to the custody of the sheriff of Linn county; and afterward, on the 17th of July 1878, the county attorney entered a *nolle prosequi* to the information, and *Snyder* was discharged.