No. 25,013.

THE STATE OF KANSAS, *Appellee*, v. CHARLES BROWN ·et al. (JOHN BRIZENDINE and MRS. JOHN BRIZENDINE, *Appellants*).

SYLLABUS BY THE COURT.

1. LIQUOR NUISANCE—*Circumstantial Evidence—Sufficient for Conviction—Weight of Evidence for Jury—Review on Appeal*. When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt.

2. SAME—*Province of Jury to Determine Nature and Degree of Guilt*. The appellants were charged in separate counts of an information with manufacturing intoxicating liquor, having intoxicating liquor in their possession, and maintaining a place where intoxicating liquor was manufactured and kept for unlawful purposes. They were acquitted of manufacture and possession, and found guilty of maintenance only. Conceding maintenance of the place necessarily involved manufacture and possession, the verdict of guilty was not vitiated by the verdict of acquittal.

Appeal from Anderson district court; HUGH MEANS, judge. Opinion filed November 10, 1923. Affirmed.

*J. Q. Wycoff*, of Garnett, for the appellants.

*Charles B. Griffith*, attorney-general, *John F. Rhodes*, assistant attorney-general, and *De Witt M. Stiles*, of Garnett, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The Brizendines were convicted of keeping a liquor nuisance, and appeal.

Brown and his wife, his sister, Mrs. Brizendine, and her husband, were living in a house with four rooms on a farm near Westphalia.

On the evening of Sunday, October 22, 1922, the sheriff and some assistants searched the premises. One room was used for a scantily furnished kitchen and dining room; two rooms were used for bed and living rooms, the beds being made on springs laid on the floor; the southeast room contained a fully equipped still and utensils to operate it, including an oil stove, five barrels—two filled with rye mash—a tub, a washboiler, and numerous large and small bottles. Near the cistern back of the house was found a small barrel containing fermenting wild grapes. The still was in operation, and produced a quart of liquid while the officers were at the place. When the officers arrived, Brown was feeding hogs some 300 yards distant from the house. Mrs. Brown admitted the officers, and the Brizendines were found in the southwest room. The occupants of the house professed ignorance of the whereabouts of the key to the still room, which was locked. When asked for the key, Brizendine said, "ask Mrs. Brown." When Mrs. Brown was asked for the key, she said, "ask Brizendine." The key was found on the dining table, where it had been conveniently placed. Brown, who pretended to assume all responsibility for the still, was not in the house when the search was made, and the officers had sent Brizendine out of the southwest room and into the kitchen.

Brizendine owned an automobile, which was at the place when it was searched. Eighteen pint bottles and four or six quart bottles of liquor were found in the automobile. The automobile was locked, and Mrs. Brizendine had the key. Previous to the search a container in a sack, and bottles containing liquor, had been found in the weeds of a slough some distance from the house, where they had been taken by an automobile. Previous to the search there had been much going and coming in the automobile by Brown and the Brizendines. Things had been unloaded from the automobile at the kitchen door at night. A barrel and a sack of sugar were among the articles brought there in the automobile. The automobile was the only means of conveyance the occupants of the house possessed.

The occupants of the house used quantities of water, but very few clothes were hung on the line. Brizendine appears to have been good at drawing water, and had been observed to draw as many as thirty gallons of water from the cistern at one session, and to carry water into the house.

The part of the farm on which the house stood had been rented by Brown about the first of September. When the Browns and the

Brizendines moved in, the windows were bare. When the search was made the window of the still room was covered with burlap, tacked on the inside. Neighbors living about 150 yards away had heard considerable hammering in the house when Brown was away but the Brizendines were there.

Mrs. Brizendine testified her husband was a railroad man who, in the summer of 1922, was on strike. She sold her home in Kansas City, stored her furniture, and since her brother was going to Kansas, she and Brizendine came with him, to buy a farm. The automobile was purchased on August 25, and previous to search of the house the automobile had been used a good deal, almost every day. The reason was, Brown was teaching her and Brizendine to drive the automobile, and they were looking at farms. She was with her brother when a sack of sugar was brought home, but it was for use in cooking. She did pick some wild grapes, but some grape butter or something was made. They all lived together, and kept no account of expenses, but she had no knowledge of when Brown got his stuff or where he got it, or how he got it to the house. Testimony like this was given for the defendants, *ad nauseam,* and some explanation more or less credible was forthcoming for every fact and circumstance connecting the Brizendines with keeping and running the still. It seems they did buy a farm, about October 17, and there was testimony Mrs. Brizendine said to one of the officers, the officers would not have gotten them if the officers had not come that day.

Brown and the Brizendines were charged in three counts with manufacturing intoxicating liquor, having intoxicating liquor in their possession, and keeping a place where intoxicating liquor was manufactured and kept for unlawful purposes. Brown pleaded guilty, and made heroic effort by his testimony to clear his sister and her husband. The jury made magnanimous response by acquitting the Brizendines of everything except assisting in keeping the liquor nuisance.

The appellants say the evidence of guilt was all circumstantial; to support conviction, circumstantial evidence must be incompatible with any reasonable hypothesis except guilt, and incapable of explanation on any reasonable hypothesis except guilt; and in this instance the circumstances were compatible with innocence of the appellants.

The evidence of guilt was not all circumstantial. The fact of

nuisance was proved by direct evidence; relation of appellants to the nuisance was proved in part by direct evidence, and the inference of guilty connection with maintenance rested only partially on circumstances. The rule of law stated was taken from the syllabus in the case of *The State v. Hunter*, 50 Kan. 302, 32 Pac. 37. Strictly the rule applies in those cases only in which the evidence is all of circumstantial nature. Conceding the conviction rested entirely on circumstantial evidence, the appellants ignore the concluding portion of the syllabus referred to, which states the rule governing action of this court when reviewing a conviction based on circumstantial evidence, as follows:

"However, where such testimony fairly tends to show the guilt of the defendant, the weight of the same is for the jury; and where the jury has found, after being properly instructed, that the defendant is guilty, and the verdict has been approved by the trial court, it will not be disturbed because of the insufficiency of the evidence." (Syl. ¶ 1.)

Hunter was convicted of stealing cattle. He was in the vicinity of the stolen cattle when they were found, but he denied custody of the cattle, denied making statements tending to show guilt, and gave plausible explanations of the incriminating circumstances, which made them appear compatible with innocence. The court said:

"These denials and explanations were for the jury, who, upon proper instructions, have chosen to disbelieve him, and have found not only that the testimony offered by the state was true, but that the facts and circumstances were such as to be inconsistent with any other rational conclusion than that the prisoner was guilty of the charge. . . . The testimony offered seems to have been sufficient to satisfy the understanding and consciences of the jury that the defendant was guilty. Under these circumstances the conviction must stand." (pp. 305, 306.)

The appellants say there was no conflict in the evidence. There was conflict in this sense: Testimony of Brown and the appellants was not consistent with a lot of plain indications of guilt, and the jury were obliged to determine on which they would depend. Concede, however, there was no conflict in the evidence, and the case rested entirely on harmonious evidence of the state. The inferences to be drawn were inferences of fact, to be drawn by the jury. The jury is the body to determine whether circumstances are compatible with any rational conclusion except guilt, not this court, and when the jury has made the determination, and the trial court has approved it, this court does not interfere.

In the case of *The State v. Diebolt,* 54 Kan. 129, 37 Pac. 992, a conviction of murder in the second degree was set aside; and in the case of *The State v. Sweizewski,* 73 Kan. 733, 85 Pac. 800, a conviction of selling intoxicating liquor was set aside. The opinion in each case discussed the compatibility of circumstances with innocence of the defendant, but the ground of the decision in each case was, there was no substantial evidence warranting the inference of guilt.

The appellants were acquitted by the jury of manufacturing intoxicating liquor, and of having intoxicating liquor in their possession, and they say they could not be guilty of maintaining the nuisance unless they were guilty of possession· or manufacture or both. The court is not prepared to say that assisting in maintaining a place where intoxicating liquor is manufactured necessarily involves possession of the liquor or participating in the processes of its production. Concede, however, that under the evidence in this case, maintaining the place necessarily involved manufacture and possession of the liquor, the jury, on ample evidence, has found appellants guilty beyond a reasonable doubt of assisting in keeping the place, and the jury must make its own peace with conscience.

The judgment of the district court is affirmed.