No. 40,357

STATE OF KANSAS, *Appellee,* v. WESLEY MITCHELL, *Appellant.*

(310 P. 2d 1063)

Opinion filed May 11, 1957.

*Wm. E. Ward,* of Wichita, argued the cause and *Fred C. Helm,* of Wichita, was with him on the briefs for the appellant.

*Keith Sanborn,* Deputy County Attorney, of Wichita, argued the cause and *John Anderson, Jr.,* Attorney General; *Paul E. Wilson,* Assistant Attorney General; *Robert E. Hoffman,* Assistant Attorney General, all of Topeka; *Warner Moore,* County Attorney; and *Nicolas W. Klein,* Deputy County Attorney; both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HALL, J.: This is an appeal from the verdict of the jury convicting the defendant of murder in the second degree.

On the 9th day of December, 1955, in the city of Wichita, Sedgwick County, Kansas, Marjorie Mitchell died as the result of a bullet wound from a .22 caliber rifle. Her common law husband, Wesley Mitchell, was charged with the crime of murder in the first degree and was tried in the district court of Sedgwick County in March, 1956. The jury convicted him of murder in the second degree.

The defendant filed a motion for new trial which was overruled. The defendant was sentenced to twenty-five years in prison at the Kansas State Penitentiary and makes this appeal.

Defendant makes eight specifications of error. The essential facts necessary to understand the alleged errors are as follows.

The defendant, Wesley Mitchell, testified he had lived in Wichita "off and on" for about three years. After his discharge from the army he visited in Louisiana, his former home, and then came to Newton, Kansas. It was there he first saw Marjorie Mitchell. They commenced to live together as common law man and wife. After living in Newton about a year they moved to Wichita where they bought a trailer house and rented space at 2842 North Washington. He and Marjorie had two children.

On the day of Marjorie's death, December 9, 1955, he had taken her to work about 2:00 p. m. He had made an arrangement with her that if he did not pick her up on time she would take the bus home. Because of car trouble he did not pick her up and returned to the trailer house.

The defendant testified that when his wife arrived home he was lying on the bed fully dressed, except for shoes, with the lights out and the radio playing. They had a conversation about why he did not pick her up and also about his proposed trip to Louisiana. His testimony as to the death of his wife is as follows:

" '. . . Mitchell if you take the trip down there (Louisiana) I won't ever see you again,' I said 'What makes you think that?' she said, 'Because I feel like I won't ever see you again,' and say, 'I am just about gone as far as I can go,' and all at the same time she was walking back and forth in the trailer house and the light wasn't even turned on and I was still laying in the bed and shortly after that I heard the sound of a gun and I got up out of bed to see what happened and when I got out of bed and turned the lights on I still didn't know what happened, I said, 'Honey what happened?' I saw the rifle laying in the floor and I still didn't know what happened and she had her hand right up

on her chest just like that (indicating), she said, 'Well this is it,' and I want you to promise me one, thing, will you take care of the kids?' And I didn't give her no answer whether I would take care of the kids or not, I kept trying to find out what happened and she said 'This is it,' and she put her arms around me and hugged and kissed me and when she removed her hand from under her neck I seen a tiny bit of blood just barely coming down and I saw what happened and she got hold of me, slumped down to the floor, then after she got on the floor there was just a little tiny blood until she set on the floor then she doubled up and set down on the floor the blood started coming out then I went out to the car to try to get it started and I couldn't get it started and I went down to the nearest neighbor I know that had a telephone to call for help."

The trial lasted five days and there was considerable testimony from witnesses on both sides,. particularly from the deputy sheriffs who were called to the scene, the doctor who examined the body, the forensic technician who examined the physical evidence, the landlord and other neighbors, friends and acquaintances, and the defendant. The defendant was the only witness and person present in the trailer house at the time his wife was shot except for the two small children who were sleeping in near-by cribs.

The State tried the case on the theory that the defendant killed his wife by shooting her in the back with a .22 caliber rifle.

The defendant made his defense on the theory that his wife had committed suicide by shooting herself with the .22 caliber rifle.

Defendant's first specification of error is that the verdict of the jury was not sustained by the evidence. His principal contention is that the jury determined the defendant's guilt on circumstantial evidence alone and that such evidence was not compatible with any reasonable hypothesis of guilt. He questions the doctor's testimony that the bullet entered the right shoulder and came out through the left front side of the neck and argues that there was equally convincing and competent evidence the bullet entered from the left front side of the neck and came out through the back right shoulder all of which would tend to prove defendant's contention that his wife committed suicide.

In support of his position defendant cites *The State v. Asbell,* 57 Kan. 398, 46 Pac. 770; *The State v. Sweizewski,* 73 Kan. 733, 85 Pac. 800; *The State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *Hoover v. Hopkins,* 122 Kan. 65, 251 Pac. 411; *State v. Ridge,* 144 Kan. 402, 61 P. 2d 109; *State v. Goldsberry,* 160 Kan. 138, 160 P. 2d 690; and *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251.

We do not believe these authorities fully support defendant's

contention. The established rule in a circumstantial case is that it is the function of this court merely to find if there is a basis in the evidence for a reasonable inference of guilt. (*State v. Fouts*, 169 Kan. 686, 221 P. 2d 841; *The State v. Hunter*, 50 Kan. 302, 32 Pac. 37; *State v. Murphy*, 145 Kan. 242, 65 P. 2d 342.)

In *State v. Haught*, 180 Kan. 96, 299 P. 2d 573, the court said:

". . . It is the function of the jury, not that of a court of appellate review, to weigh the evidence and pass upon the credibility of the witnesses, and if there is substantial, competent evidence to support it, a verdict will not be disturbed on the ground it was not based on sufficient evidence, or contrary to the evidence. (*State v. Osborn*, 171 Kan. 330, 232 P. 2d 451.) . . ." (p. 100.)

In *State v. Brizendine*, supra, the court said:

"When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatibile with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt." (Syl. 1.)

We have carefully examined the record and find the verdict of the jury was amply sustained by the evidence, circumstantial though much of it is.

Defendant also specifies as error the admission into evidence of the bloody shirt removed from Mrs. Mitchell's body on the grounds that it had no probative value and served only to prejudice the jury. Defendant's contention is without merit.

In a trial for murder by shooting the clothes worn by the deceased when killed may, when properly identified, be received as evidence tending to show the nature of the wounds, the manner and means of death and proximity of the person using the weapon to the one slain. (*The State v. Jackett*, 85 Kan. 427, 116 Pac. 509; *The State v. Moore*, 80 Kan. 232, 102 Pac. 475; 26 Am. Jur., Homicide, § 446.) The rule is not without some limitations as stated in *The State v. Jackett*, supra:

". . . But the spectacular parade of bloody garments should not be permitted." (Syl. 3.)

And in *The State v. Moore*, supra:

"Spectacular displays of physical objects germane to the transaction under investigation, cunningly devised to arouse passion or to excite prejudicial emotions on the part of the jury, should be thwarted or promptly suppressed; but legitimate evidence can not be excluded merely because it is grewsome and may tend to move the jury's feelings." (Syl. 6.)

In this case the shirt clearly had probative value. Among other things it corroborated the testimony of the witnesses regarding the nature and position of the bullet wound. Defendant makes no showing in this appeal that the admission of decedent's garment in any way prejudiced the jury or that the court abused its discretion in admitting it. The general rule of admissibility applied and the defendant's contention is without merit.

Defendant also specifies as error the abuse of the court in refusing to allow defense counsel to pursue a certain line of cross examination of a State's witness when the credibility of the witness was in question.

We have examined defendant's contention but find no prejudice or abuse of discretion by the court. As a matter of fact, defense counsel was allowed a lengthy continuance of his line of cross examination before the court sustained objection.

It has been repeatedly held that the extent to which a witness may be cross examined is largely in the discretion of the trial court, and unless prejudice or abuse of discretion is shown, there will be no reversal. (*State v. Zeilinger,* 147 Kan. 707, 78 P. 2d 845; *State v. Stewart,* 179 Kan. 445, 296 P. 2d 1071; *Hillebrand v. Board of County Commissioners,* 180 Kan. 348, 304 P. 2d 517.)

Defendant also specifies as error the permission of the court to the State to endorse additional witnesses on the information over the objections of the defendant.

Defendant recognizes the rule of law that the question of endorsing additional names on the information is one of discretion to be exercised by the trial court. (*The State v. McDonald,* 57 Kan. 537, 46 Pac. 966; *State v. McGlade,* 165 Kan. 425, 196 P. 2d 173; *State v. Eidson,* 143 Kan. 300, 54 P. 2d 977; *State v. Hanks,* 179 Kan. 145, 292 P. 2d 1096.) However, defendant contends that the witnesses so endorsed did not limit their testimony to rebuttal evidence but gave additional evidence to the State's case in chief.

A reading of the testimony by the additional witnesses does not substantiate defendant's contention. Their testimony was in answer to matters raised by defense witnesses and there is no showing it was outside the rule or that the defendant was prejudiced thereby.

Defendant contends the court erred in its failure to include a special instruction on circumstantial evidence. The defendant requested the following instruction which was denied by the court.

"You are instructed that the law does not presume that a homicide was deliberate and premeditated and done with malice, but these facts must be

proven by the evidence or reasonably inferred from established circumstances, and these circumstances must be found to exist by you before a verdict of murder in the first degree may be returned."

The court's instruction said:

"The essential difference between direct or positive evidence and circumstantial evidence is that the former is more immediate and has fewer links in the chain of connection between the premises and the conclusion.

"If you find that the prosecution must rely for a conviction in this case in whole or in part upon circumstantial evidence, for proof of guilt of the offense charged, the rule is that all the links in the chain of evidence must be established by the evidence beyond a reasonable doubt. This does not mean, however, that every particular fact going to make up a link in the chain of evidence must be established beyond a reasonable doubt, but you must, under all of such circumstances, be satisfied from the whole evidence, beyond a reasonable doubt, of the truth of the several links and each of the several links in the chain of circumstances. Where the circumstances, taken together, are of a conclusive character, satisfying the mind to a reasonable and moral certainty that defendant is guilty of the offense or offenses charged, such circumstantial evidence is sufficient to support a verdict of guilty."

The instruction given by the court fully covered the requested instruction of the defendant. Error cannot be predicated upon a failure of the court to instruct solely in the language of another.

Defendant cites *The State v. Sweizewski,* supra; and *State v. Harrison,* 153 Kan. 749, 114 P. 2d 310. Defendant takes the position that the court's instruction did not fully explain the law in a case based on circumstantial evidence. The cases cited do not help him. In *State v. Harrison,* supra, the court said:

"Another point argued by defendant is that the court erred in refusing a requested instruction. This instruction was to the effect that where the state relied upon circumstantial evidence for conviction, the circumstantial evidence relied upon to establish the guilt of defendant must be of such a character as to exclude every reasonable supposition or hypothesis other than the defendant's guilt.

"The court refused to give this instruction. This was not error because the state did not rely entirely upon circumstantial evidence. Circumstantial evidence was merely incidental to the direct evidence of the codefendant. (See *State v. Gereke,* 74 Kan. 196, 86 Pac. 160.)" (p. 751.)

Likewise, this case was not entirely one of circumstantial evidence. The court's instruction was proper.

Defendant contends also that the court erred in failing to instruct the jury on all degrees of manslaughter.

The court instructed only on murder in the first and second degrees. There is nothing in the record to indicate any objection by the defendant to the failure of the court to instruct on manslaughter.

G. S. 1949, 62-1447 provides for the duty of the trial court to instruct the jury on all matters of law necessary for their information in giving their verdict.

On the question of lesser offenses, this court has said in *State v. Hockett*, 172 Kan. 1, 238 P. 2d 539:

"The matter of instructing on lesser offenses as disclosed by the record in the instant case, was well within the sound rule of law, which clearly stipulates that the trial court shall not instruct on lesser offenses which are not naturally or reasonably supported by the evidence. In *The State v. Clough*, 70 Kan. 510, 79 Pac. 117, this court stated:

'. . . it is not error for the trial court to omit instructing the jury as to any one, or all, of such lower degrees of crime included in the charge, when the evidence tends to establish the highest degree of crime charged and does not tend to establish guilt of any lower degree of crime included therein.'

See also *State v. Hardisty*, 121 Kan. 576, 249 Pac. 617. In the instant case the evidence did not clearly require the court to instruct on any lower degree of the crime. On the contrary, it clearly established the guilt of defendant of commission of the offense of robbery in the first degree."

See, also, *State v. Noble*, 175 Kan. 398, 264 P. 2d 479.

Defendant cites a number of cases where it was determined instructions should have been given on lesser offenses. In each of these cases there was evidence which would warrant and support an instruction on lesser included offenses, and under such conditions it was the duty of the court to so instruct. However, there was no evidence here of any offense of manslaughter. The case was tried on the theory of murder in the first degree and defended on the theory of suicide. An examination of the various degrees of manslaughter shows not a single element of those offenses in the evidence of this case. Under these circumstances the court was not required to so instruct.

Defendant also specifies as error the failure of the court to sustain his motion for a directed verdict and his motion for a new trial on the grounds of newly discovered evidence. We have examined these specifications of error very thoroughly and find no reversible error.

The judgment is affirmed.