No. 40,728

THE STATE OF KANSAS, *Appellee*, v. VIRGIL DARRELL RUSSELL, *Appellant*.

(323 P. 2d 913)

Opinion filed April 12, 1958.

*Russell Shultz,* of Wichita, argued the cause, and was on the briefs for the appellant.

*Keith Sanborn,* Deputy County Attorney, of Wichita, argued the cause, and *John Anderson, Jr.,* Attorney General, *Robert E. Hoffman,* Assistant Attorney General, of Topeka, and *Warner Moore,* County Attorney, of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant was charged and tried for the offense of burglary in the nighttime (G. S. 1955 Supp. 21-520) and for the offense of larceny in committing the burglary (G. S. 1949, 21-524). He was convicted of burglary and found not guilty of larceny. Following the overruling of his motion for a new trial he perfected this appeal.

The defendant specifies the trial court erred on two grounds when it overruled his motion for a new trial: (1) The verdict was contrary to the law and the evidence, and (2) the court's refusal to allow jurors to be examined with respect to evidence and information they received which was not authorized by the court, and misconduct on the part of a juror or the jury.

The state's case consisted entirely of circumstantial evidence. On November 27, 1956, Gordon Patrick, the owner and operator of Marlene and Pat's Cafe, located at 307 West Tenth Street, Wichita, Kansas, closed and locked the building securely about 5:30 in the evening and went home. The cafe is a small prefabricated building on the south side of Tenth Street. Immediately west of the cafe is a north and south alley which goes through the block to Ninth Street, the next street south. West of the alley on Tenth Street is a parking lot and west of the parking lot is the J. & J. Tavern. Later that evening a man of the same size and build as the defendant was seen by Mr. and Mrs. George Woodman as they walked west by the front of the cafe on their way to the J. & J. Tavern. They saw a man come out of the windbreak on the north side of the cafe who passed within twenty-five feet of them and turned south into the alley. South of the cafe and east of the alley is a parking lot. Shortly after the Woodmans entered the tavern

they saw a man put his hands up to his face and peer through the window of the tavern; he stood there a minute or two, and walked away. That man was later positively identified by the Woodmans as the defendant Virgil Darrell Russell. A few minutes later the Woodmans left the tavern and walked by the front of the cafe to their car parked east of the cafe. Just as they passed the front of the cafe they heard splintering and breaking sounds; they looked into the cafe and saw the head of a man who was "hunched down" behind the counter. They got into their car, drove approximately two blocks, and called the police from a filling station; they then circled the block and as they proceeded south on Fairview Street east of the alley they saw a car going down the alley south from the cafe which turned east on Ninth Street. The Woodmans turned west on Ninth Street so the two automobiles met. The Woodmans observed the last two numbers of the license plate on the automobile were "77" and that it was a blue over white 1955 or 1956 Buick. When they drove back to Tenth Street the police had arrived at the cafe. Detective Herring, an investigator of the police department, found the burglar had entered the cafe by prying open the metal front door. Inside a pin-ball and music machine had been pried into and both were badly broken. Photographs were taken of the condition of the inside of the cafe but no fingerprints were found.

The following morning at 5:00 A. M. Officers Beaver and Phumphry arrested the defendant at the intersection of West Street and Central Avenue in Wichita. The defendant was driving his white over blue over white 1955 Buick; he was alone in the automobile which bore license plate No. SG 34077. Defendant told the officers the automobile had been in his possession all evening. Two tire tools were found in the defendant's Buick; one lying on the floor between the front and back seats, the other in the trunk. Police Lieutenant Clyde E. Bevis, supervisor of the police laboratory, and Detective Herring made a negative plasticine impression of the front door of the cafe by forcing the material into the tool impression on the door jamb which Gordon Patrick testified was not on the door when he locked up the evening before. After the negative plasticine cast was made a plaster positive cast was made from the negative. State's Exhibit 4, one of the tire tools taken from the defendant's car, fit perfectly into the positive cast, and Exhibit 3, the other tire tool, did not. Bevis took Exhibits 3 and 4

to the cafe and removed a metal plate which had been placed over the door jamb to protect the tool impression. He testified in detail to the minute impressions, bends and projections of Exhibit 3, and further testified that all of the different bends and irregularities fitted perfectly into the tool impression of the plaster cast and into each indentation and variation in the tool mark upon the door of the cafe. Thus it was established that the tool taken from the defendant's possession before dawn the morning following the burglary fit perfectly into the plaster positive cast and into the tool impression on the door of the burglarized cafe.

The defendant denied any knowledge of the burglary. He testified that on November 27, 1956, he got off work about 3:00 o'clock in the afternoon; that about 4:00 o'clock he went to the Airmen's Club on East Douglas operated by Floyd Creech; that he spent the evening with Creech and remained there until 12:30 A. M. on November 28, 1956, and went from there to the Palm's Club where he stayed until about 4:30 A. M.; that he was arrested at 5:00 o'clock A. M. while on his way home. Although there was no notice of a plea of alibi filed as provided in G. S. 1949, 62-1341, the defendant talked with Creech in Wichita the week before the trial but no effort was made to call him to testify on behalf of the defendant.

The jury was properly instructed as to the law of circumstantial evidence. It chose not to believe the defendant's version, and concluded he had burglarized the cafe, gaining entry by means of the tire tool taken from his possession. In reaching its verdict the jury recommended clemency.

We have examined the record and are of the opinion defendant's contention that the verdict was contrary to the law and the evidence cannot be sustained. While the evidence was entirely circumstantial, it was conclusively established a man of the same size and build as the defendant was seen to come from the windbreak at the front of the cafe a few minutes before the burglary; that the defendant was seen in the vicinity of the cafe immediately before it was burglarized; that a 1955 or 1956 blue over white Buick automobile similar to the defendant's was seen leaving the alley near the cafe following the burglary and the last two numbers of its license plate were "77," the same as the defendant's, and that a tire tool taken from the defendant's car fit perfectly into the positive plaster cast of the tool mark on the doorframe and into the mark on the doorframe itself. Moreover, defendant testified his automobile was

in his possession all evening. There was ample evidence from which the jury was justified in returning its verdict of guilty of burglary. It is the function of the jury, not an appellate court, to review and weigh the evidence and pass upon the credibility of witnesses. In *State v. Haught,* 180 Kan. 96, 299 P. 2d 573, this court said:

". . . It is the function of the jury, not that of a court of appellate review, to weigh the evidence and pass upon the credibility of the witnesses, and if there is substantial, competent evidence to support it, a verdict will not be disturbed on the ground it was not based on sufficient evidence, or contrary to the evidence. . . ." (l. c. 100.)

In *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174, it was held:

"When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt." (Syl. ¶ 1.)

A verdict will not be disturbed on the ground that it is not based upon sufficient evidence or is contrary to the evidence where there is competent and substantial evidence to support it (*State v. Harper,* 137 Kan. 695, 22 P. 2d 454; *State v. Osburn,* 171 Kan. 330, 232 P. 2d 451; *State v. Mitchell,* 181 Kan. 193, 310 P. 2d 1063).

The defendant next argues the jury received evidence and information not authorized by the court, and asserts misconduct on the part of a juror or the jury. Defendant's motion for a new trial was timely filed and set for hearing on February 28, 1957. Late in the afternoon of February 27, counsel for defendant advised the court he had subpoenaed all of the jurors with the intention of interrogating them the next day concerning misconduct in the jury room. The court advised counsel it did not want the jurors subpoenaed; that it was not going to permit the jurors to be examined as to conduct in the jury room in a formal hearing and asked counsel to stop service of the subpoenaes, which counsel tried to do. The court advised counsel that if he wanted the court to talk to the jurors as to whether misconduct occurred, it would do so. Counsel stated:

"Mr. Trail: Of course I know of no other way to settle this than to have the court talk to them. However, I think both the County Attorney and myself should be present at the time they are talked to or that you talk to them. . . . I do think that we should be present when these people are talked to. Not to argue with them or anything, but so as to let the things that Mr. Sanborn and I might know what the court would not be informed on, come up."

The court said:

"I have no objection to counsel being present at the time the court talks to the jurors. However, I am not going to permit counsel to interrogate the jurors. If counsel have anything they want the court to ask the jurors, if they will submit it to the court in advance, the court will be glad to cover it in his examination of the jurors. If you have something particularly you want covered other than what you have already told the court, why if you will submit it to the court, the court will interrogate the jurors about it."

March 8, 1957, was fixed as the day for argument upon the motion for a new trial and the interrogation of the jurors by the court. On that date three jurors, Mr. King, the foreman of the jury, Mr. Cox and Mr. Beaty were questioned separately in the presence of counsel and the assistant county attorney. Counsel commenced to interrogate the jurors and the court stated that it would ask the questions. Counsel then advised the court that if he could not ask the questions there was no further sense in talking with the jurors. The court announced it was adhering to its previous ruling that if counsel wanted questions asked the jurors, they be given to the court in advance; that since no questions were submitted by either the state or counsel, and if counsel was not willing to abide by the court's ruling, it would excuse the rest of the jurors, which was done. Counsel then made his proffer that the bailiff and the foreman of the jury had a conversation before the jury had reached its verdict. The court announced it was satisfied from its interrogation of the jurors that there was no misconduct on the part of the jury and the defendant had a fair trial in every respect.

Counsel made his objection in the record as to the action of the trial court and then made a proffer as follows:

"Mr. Trail: 'I would like to have it set out in the record that these three jurors that we did discuss this matter with, confirmed the fact that the foreman had left the room and talked to the bailiff, or I would like to make a proffer of that in evidence.'"

The defendant contends the proffer was sufficient to raise a presumption that the conversation was prejudicial and was misconduct on the part of the bailiff and the foreman of the jury, and cites G. S. 1949, 62-1448; *Madden v. State of Kansas*, 1 Kan. 340; *State v. Snyder*, 20 Kan. 306; *State v. Bailey*, 32 Kan. 83, 3 Pac. 769 and *State v. Scholl*, 118 Kan. 629, 236 Pac. 816. We do not agree. At most the proffer indicates the foreman left the jury room and talked with the bailiff. It would have been misconduct and irregular for the bailiff to have had any conversation with the foreman of the

jury *pertaining to the case,* but every irregularity does not constitute reversible error (*State v. Harrington,* 148 Kan. 602, 606, 83 P. 2d 659, and cases therein cited). There is nothing in the record indicating the bailiff discussed the merits of the case with the foreman of the jury, or that he communicated anything to the jury. The showing made by the defendant was not sufficient to raise a presumption of misconduct on the part of the bailiff, the foreman, or the jury so as to cast a burden upon the state to establish that the conversation was not prejudicial. Error is never presumed and it is incumbent upon the party complaining to establish affirmatively that error was committed. The bailiff was present in the courtroom throughout the proceedings of the motion for a new trial and it would have been an easy matter to have examined him with respect to the alleged conversation, but the defendant made no effort to do so. We have examined the authorities cited by the defendant but they are not persuasive on the precise point presented. In our opinion no prejudicial error is shown by the record.

The state, perhaps out of an abundance of caution, had all the testimony transcribed and it prepared and filed a counter abstract of the evidence. This we have examined. On the whole we are convinced the defendant had a fair trial and that a proper verdict was returned.

Finding no reversible error in the record, the judgment of the court below is affirmed.

JACKSON, J., not participating.