No. 40,846

THE STATE OF KANSAS, *Appellee,* v. IRA LEDBETTER, *Appellant.*

(327 P. 2d 1039)

Opinion filed July 7, 1958.

*Roy L. Rogers*, of Wichita, argued the cause, and *Pat Warnick*, of Wichita, was with him on the briefs for the appellant.

*Harold S. Herd*, county attorney, of Coldwater, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant appeals from a conviction of manslaughter in the first degree.

The information charged that the defendant killed Alice Kimberly, a woman pregnant with a vitalized embryo, by using a certain instrument, namely, a cannula with syringe attached, known as a "milk tube," in an attempt to procure an abortion or miscarriage which was not necessary to preserve her life. Defendant was charged with manslaughter in the first degree under G. S. 1949, 21-407. The theory of the state was that deceased was killed by defendant while he was attempting to perpetrate the crime of abortion as defined by G. S. 1949, 21-437.

A brief résumé of the voluminous record of evidence discloses that defendant, Ira Ledbetter, who at times had acted as a practical veterinarian, at approximately one o'clock on the afternoon of February 1, 1957, picked up Mrs. Alice Kimberly at her home in Coldwater and proceeded to drive around with her on various country roads for the next hour or two, making intermittent stops. At approximately 3:15 p. m. defendant rang the doorbell of a Coldwater mortuary and informed Agnes Swarmer that he had outside in his car the body of a dead woman he had found by the side of a road. He told her a little later he was not sure but it could be Mrs. Kimberly. Dr. McCoy, county coroner, with considerable past

experience in obstetrics, was summoned immediately and he, in turn, called Sheriff Hackney, who arrived at the mortuary at 3:30 p. m. The sheriff and the doctor found the body slumped to the left in the righthand front seat of defendant's car. After a preliminary examination and having taken decedent's body temperature at 3:40 p. m., Dr. McCoy pronounced the time of death as one hour earlier. Upon investigation of defendant's automobile they found what appeared to be fresh blood on the front seat and right front and back doors, the glass and the back glass, and a shoe track, which was determined to have been made by deceased's right shoe, above the right front door. Lying on top of defendant's coat in the back seat was an instrument belonging to him, which he later admitted having used on a cow four days before, known as a cannula or "milk tube," consisting of a blunt needle point with rubber tubing and a syringe bulb attached. They found blood on the point thereof. In front of the rear seat rested a partially broken jug of ice directly behind the very wet portion of the right front seat.

Dr. McCoy testified that in performing the autopsy early that evening he first opened the pulmonary arteries in the chest cavity and discovered a "considerable amount of frothlike blood" coming therefrom, which convinced him that death had been caused by a massive air embolus to those arteries and had been almost instantaneous. He also examined decedent's reproductive organs and found her to have been two and one-half to three months pregnant, that the placenta had torn loose from the wall of the uterus and was located over the cervix, which condition was probably caused by the insertion through the vagina and cervix and into the main body of the uterus of a blunt instrument smaller than a lead pencil, as well as the introduction of air into the junction between the placenta and the uterus and thence into the bloodstream. The doctor testified an abortion had been attempted and he as a physician would not have attempted an abortion as he found no evidence of disease present and no indication thereof which would have rendered continued gestation perilous to the life of deceased, that because of the marked difficulty in introducing an object into the cervix and up into the cervical canal and the absence of any particular injury to the cervix, the attempted abortion had not been self-inflicted. He also testified that upon examination of defendant's car he observed a cannula or metal "milk tube" with rubber tubing and bulb attached lying in the

back seat on top of defendant's coat, that there was what appeared to be fresh blood on the tip of the instrument and that this instrument could have caused Mrs. Kimberly's death. He also saw a broken jug of ice in the back seat of defendant's car.

Laboratory tests made on various articles showed human blood, type A (the same as deceased's), on and inside the tip of the "syringe type instrument," on defendant's trousers, on decedent's slip, and on the right rear chrome strip from the bottom of the right rear door of defendant's car.

There were offered in evidence the notes and report of a pathological examination of various portions of deceased's organs by Dr. Fink, who testified that his examination of decedent's uterus disclosed she had been pregnant and there had been "instrumentation" to the uterus by a "relatively small, fairly blunt instrument" which "would have had to have been introduced rather accurately" and which had gotten into the cervix cleanly and efficiently, and that such an operation "would take a certain amount of skill," that if he had been performing the operation it would have been necessary to see the area. He testified an abortion had been attempted and that the instrumentation he had observed in the uterus could have been caused by the "milk tube," that the separation of the placenta from the uterus had to be caused not only by the actual instrumentation but, in addition, by the insertion of some gaseous material, for example, air. He also testified he thought it "highly improbable" that decedent could have inserted the instrument into the cervix as neatly and cleanly as it had been done.

The evidence further disclosed that over a period of several days defendant told various conflicting stories regarding his activities on the day in question. He admitted picking up Mrs. Kimberly on the afternoon of her death, driving with her on various country roads and delivering her body to the mortuary, also that he owned the "milk tube."

Defendant contends the trial court erred in overruling his motion for a directed verdict of not guilty and for his discharge on the ground that the evidence was insufficient to go to the jury, since it failed to exclude every other reasonable hypothesis except guilt. In support of his contention defendant cites *State v. Cone,* 171 Kan. 344, 232 P. 2d 470; *State v. Ragland,* 170 Kan. 346, 226 P. 2d 251; and *State v. Goldsberry,* 160 Kan. 138, 160 P. 2d 690. We do not believe these authorities support defendant's contention under the

facts in the instant case. The same contention was made and the mentioned authorities were cited in our recent case of *State v. Mitchell,* 181 Kan. 193, 196, 310 P. 2d 1063, and we said that the established rule in a circumstantial case is that it is the function of this court merely to find if there is a basis in the evidence for a reasonable inference of guilt. (*State v. Dill,* 182 Kan. 174, 319 P. 2d 172; *State v. Haught,* 180 Kan. 96, 299 P. 2d 573; *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841; *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; *State v. Hunter,* 50 Kan. 302, 32 Pac. 37.)

In *State v. Russell,* 182 Kan. 649, 653, 323 P. 2d 913, we reaffirmed the rule announced in *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174 that where considering on appeal the sufficiency of circumstantial evidence to sustain a conviction of crime the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. In *State v. Hancock,* 127 Kan. 510, 511, 274 Pac. 209, we stated that this court does not weigh evidence and is not concerned with quantity of evidence or with inferences from evidence opposed to the verdict. Our function is to ascertain if there was substantial evidence to warrant an inference of guilt expressed by the verdict.

In our recent case of *State v. Crosby,* 182 Kan. 677, 324 P. 2d 197, we said:

"On appellate review of a conviction of a criminal offense the fact that incriminating circumstancial evidence might also be deemed compatible with innocence is not controlling, and the question before this court is not whether such evidence is incompatible with any reasonable hypothesis except guilt. That is a question for the jury and the trial court, and this court's function is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt." [Syl. 4.]

"It is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before a verdict of a jury which has been approved by the trial court may be set aside on appeal on the ground of insufficiency of evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court." [Syl. 5.]

To the same effect, see *State v. Russell,* supra; *State v. Mitchell,* supra; and *State v. Dill,* supra. The rules of law enumerated in the mentioned cases are controlling under the facts in the instant case.

After a careful review of the lengthy record we have no hesitancy in holding that the evidence was clearly sufficient to warrant the trial court's submitting the case to the jury and sufficient to support the verdict of guilty.

Defendant's other contention is that the court failed to exclude certain testimony by one of the state's expert witnesses. An examination of the record discloses that defendant interposed only one objection to the testimony complained of; that the objection was sustained, the question reframed and then withdrawn. Moreover, the record fails to disclose that any objection to the admission of evidence was presented to the trial court on defendant's motion for a new trial. His contention on this specification is without merit.

The judgment is affirmed.