No. 43,722

STATE OF KANSAS, *Appellee,* v. BEN E. ELLIS, *Appellant.*

(387 P. 2d 198)

Opinion filed December 7, 1963.

*Earl C. Moses, Jr.,* of Great Bend, argued the cause, and was on the briefs for the appellant.

*Vincent G. Fleming,* county attorney, argued the cause, and *William M. Ferguson,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Defendant (appellant) Ben E. Ellis was charged, tried and convicted on three counts of an information. Under the first count he was charged with selling mortgaged property in violation of G. S. 1961 Supp., 58-318. Count 2 charged him with obtaining money under false pretenses in violation of G. S. 1949, 21-551. Count 3 charged embezzlement in violation of G. S. 1949, 21-545. The jury found the defendant guilty as charged on all three counts. His motion for a new trial was denied and judgment was rendered on the verdict. From the order overruling his motion for a new trial, defendant appeals.

The facts may be summarized as follows: Defendant, a registered used car dealer in Larned, Kansas, doing business as Larned Motor Company, accepted for sale on April 20, 1962, a 1961 Chevrolet station wagon owned by Donnell and Annabelle Kent of Stafford. Mrs. Kent advised defendant the American State Bank of Great Bend had a mortgage on the station wagon in the amount of $2,500. Defendant and Mrs. Kent signed a written memorandum prepared by defendant relating to his paying the mortgage lien to the bank with the proceeds from the sale of the station wagon. Mrs. Kent left the station wagon with defendant that day and was assured by him that he would take care of the mortgage payments until the car was sold.

On April 26, 1962, Mrs. Kent delivered the certificate of title to defendant, signed in blank at his request. On this same day defendant and Mrs. Kent signed an agreement on a 1958 De Soto, purchased by Mrs. Kent from defendant, which showed an allowance of $400 for her equity in the Chevrolet station wagon. At that time the balance owing on the station wagon to the American State Bank was $2,537.75, and defendant informed Mrs. Kent he believed he had the station wagon sold.

On April 28, 1962, the station wagon was sold to one Eugene Hall by a sales employee of the defendant, with the defendant being present at the time the purchase agreement was prepared. The salesman was unable to locate the certificate of title, and upon inquiry by Mr. Hall as to whether or not he would get clear title, defendant informed him, "It's all right; we're going to give you a clear title. It's had a little bit against it, and we have the title settled and you will get a clear title to the car."

Relying upon this representation, Mr. Hall issued his check in the amount of $760 and signed a purchase mortgage in the amount of $1,934. On May 1, 1962, Mr. Hall received a certificate of title showing title subject only to the lien of the Larned Motor Company. Mr. Hall's note and mortgage was assigned by the defendant, sole owner of the Larned Motor Company, to the First State Bank of Osborne, which issued to defendant its cashier's check in the amount of $1,650 under date of May 2, 1962. Upon receipt of the cashier's check defendant had received a total of $2,410 in cash for the station wagon, $760 down payment from Mr. Hall and $1,650 from the First State Bank of Osborne, but failed to perform in accordance with the written agreement between himself and Mrs. Kent to pay off the mortgage to the American State Bank of Great Bend. Instead, he purchased a postal money order in the amount of $87.51, the amount of the Kents' monthly payment on the station wagon, showing Donnell Kent as purchaser and American State Bank as payee, and mailed it to the bank at Great Bend. This same procedure was followed on June 6, July 21, and August 7, 1962, and the money orders were always accompanied by coupons from the coupon book issued with the Kent mortgage loan, which book Mrs. Kent had delivered to defendant at the same time she delivered the certificate of title to the station wagon.

When the American State Bank did not receive a payment for the month of September 1962, notices were sent to the Kents, and when Mrs. Kent telephoned the bank it was then discovered the station

wagon had been sold. The bank then brought a replevin action to recover possession of its security and brought to light defendant's fraudulent sale of the mortgaged station wagon, his false representation to Mr. Hall to obtain Hall's money and purchase mortgage, and defendant's embezzlement and conversion to his own use of the sale proceeds.

Defendant first contends the trial court erred in overruling his motion to quash count 3 of the information on the ground it lacked the necessary accusation of agency and criminal intent. The information was not drawn by a master of the art of good pleading, but since it fully apprised the defendant of the nature of the offense charged against him and contained the necessary element of such offense, the motion to quash was properly overruled. (*State v. Combs,* 47 Kan. 136, 27 Pac. 818; *State v. Patterson,* 66 Kan. 447, 71 Pac. 860.)

Defendant further asserts the trial court erred in appointing an attorney to assist the county attorney in the prosecution of the action below. G. S. 1949, 19-717, provides in pertinent part that the prosecuting witness in any criminal action may employ an attorney to assist the county attorney in performing his duties in such action. Section 19-718 provides that in any criminal prosecution in a county having less than ten thousand inhabitants, the prosecuting witness may apply to the court or judge thereof for the appointment of an attorney to assist the county attorney, and the court shall, if it deems proper, appoint a suitable attorney and cause the record of such appointment to be made upon the journal of the court. Section 19-723 provides that when, in the judgment of the board of county commissioners, it becomes necessary or expedient, such board may employ an additional attorney to assist the county attorney in the prosecution of either civil or criminal matters.

The population of the county in which the instant case was tried was less than ten thousand. Outside of the voluntary statement of counsel for defendant there is nothing in the record to indicate that the assistant appointed by the court was not previously employed by the prosecuting witness or appointed by the board of county commissioners.

From a reading of the mentioned statutes it is apparent the legislature, in the public interest of better enforcement of the law, determined not to leave the matter of assistance to the county attorney entirely to the will of the county commissioners or the

prosecuting witness and made provision leaving the appointment of counsel in certain cases to the discretion and judgment of the trial judge. (*Vernon v. Edwards County Comm'rs.*, 132 Kan. 119, 294 Pac. 871.) The trial court did not err in this respect.

The gist of defendant's third contention is that the evidence was insufficient to sustain the conviction on the respective counts. We have reviewed the abstract furnished by defendant in the form of a partial transcript of the evidence, part of which has heretofore been summarized, and find there was ample evidence to sustain the conviction on each of the three respective counts of the information. It is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before a verdict of a jury which has been approved by the trial court may be set aside on appeal on the ground of insufficiency of evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court. (*State v. Ledbetter*, 183 Kan. 302, 327 P. 2d 1039; *State v. Stout*, 175 Kan. 414, 264 P. 2d 1056; *State v. Berry*, 170 Kan. 174, 223 P. 2d 726.)

Defendant argues the trial court erred in the giving of certain instructions to the jury. In the first place, defendant's abstract contains only instructions Nos. 2, 6, 7, 8, 11, 12, 16 and 17. It is apparent the trial court gave more than seventeen instructions covering the issues presented in the case. Where instructions are challenged on the grounds they are not full enough to cover the issues in the case or that they are erroneous, and where a party expects to argue that the trial court erred in this respect, he must bring up all instructions given by the trial court; otherwise, there is no way for this court, on review, to determine what may or may not have been included in those instructions not brought here. It devolves upon the party appealing to bring up a complete record of matters on which review is sought, and it is not incumbent upon the defensive party to supplement the necessary record to sustain appellant's contention of error. Unless an instruction to which an objection is made is a clear and prejudicial misstatement of the law, it can be reviewed only when other instructions, which may or may not qualify its intent and effect, are made a part of the record in order that all may be examined together. (*State v. Leigh*, 166 Kan. 104, 109, 199 P. 2d 504; *Beye v. Andres*, 179 Kan. 502, 504, 296 P. 2d 1049.) We are not in position to pass upon defendant's criticism

pertaining to the court's instructions, since the abstract contains only eight of the instructions given, and an examination of those failed to disclose any prejudicial misstatement of the law applicable to the case.

Other contentions raised by the defendant have been examined and found to be without merit sufficient to justify reversal of the action, and the judgment of the trial court is affirmed.