IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,572

STATE OF KANSAS,
*Appellee*,

v.

TAYLOR ARNETT,
*Appellant*.


SYLLABUS BY THE COURT


1.

The current Kansas criminal restitution statutes do not trigger Sixth Amendment protections as contemplated by *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and its progeny.


2.

At a minimum, section 5 of the Kansas Constitution Bill of Rights protects as inviolate the *procedural* right to have a jury decide the contested questions juries historically decided when the Kansas Constitution came into existence.


3.

The development of modern criminal restitution statutes in Kansas makes criminal restitution virtually identical to a civil judgment. Since civil damages were historically decided by juries, this virtual identity of criminal restitution and civil judgment violates section 5 of the Kansas Constitution Bill of Rights.

4.

When confronting a constitutional flaw in a statute, the court will resolve the problem, if possible, by severing the problematic portions and leaving the remainder intact.

5.

Severing only the problematic portions of the Kansas criminal restitution statutes preserves the societal goals advanced by a judicial sanction of criminal restitution.

6.

The following statutes (or portions of statutes) are unconstitutional:  K.S.A. 60-4301; K.S.A. 60-4302; K.S.A. 60-4303; K.S.A. 2020 Supp. 21-6604(b)(2); and only the last sentence of K.S.A. 2020 Supp. 22-3424(d)(1).

7.

A criminal defendant will not be faced with a civil judgment for criminal restitution unless it has been obtained separately through a civil cause of action.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 4, 2018. Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed October 15, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Samuel Schirer,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, argued the cause, and *Alan T. Fogleman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Taylor Arnett petitions this court for review of the judgment of the Court of Appeals affirming the restitution ordered against her by the district court. She argues that the restitution violates her right to a jury under both the Sixth Amendment of the United States Constitution and section 5 of the Kansas Constitution Bill of Rights. We find that her right to a jury as guaranteed by the Sixth Amendment is unharmed. However, we agree the current structure of criminal restitution in Kansas violates section 5 of the Kansas Constitution Bill of Rights in part, but the offending part of that structure can be severed from the rest, which does not violate section 5. Specifically, insofar as the ordered restitution is given the effect of a civil judgment, it violates section 5. Otherwise, it does not.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Arnett with one count of conspiracy to commit burglary after she provided the car which her boyfriend used to burglarize two houses. The boyfriend paid Arnett $200 when he returned the car. Arnett pled guilty to that conspiracy charge. Arnett's plea did not include an agreement with the State to pay any amount of restitution.

The district court held a restitution hearing, during which the State explained that it was requesting $33,248.83 in restitution, payable to three individuals who incurred losses due to the burglaries. According to the State, Arnett took no issue with the amounts of restitution ordered for the victims' total losses, but argued she should only be responsible for the $200 she obtained for her part in the burglaries. The district court disagreed and ordered the full amount of $33,248.83, jointly and severally with Arnett's codefendants.

3

In Arnett's first appeal, a Court of Appeals panel held that the State failed to show a sufficient causal connection for restitution between Arnett's plea to and conviction for conspiracy to commit burglary and the financial loss to the victims. As a result, the panel never reached Arnett's alternative arguments. See *State v. Arnett*, No. 112,572, 2015 WL 6835244 (Kan. App. 2015) (unpublished opinion). This court reversed the panel, holding that restitution may be ordered against a defendant in a criminal case if the loss to the victim was proximately caused by the crime of conviction. *State v. Arnett*, 307 Kan. 648, Syl. ¶ 7, 413 P.3d 787 (2018). This court remanded the case to the Court of Appeals to consider the constitutional arguments raised by Arnett. That panel found Arnett's arguments unavailing and affirmed the district court's restitution order. *State v. Arnett*, No. 112,572, 2018 WL 2072804 (Kan. App. 2018) (unpublished opinion). Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

Arnett did not raise her constitutional issues before the district court. Generally, a constitutional issue not raised before the district court is considered abandoned. But this court can review issues presented on appeal where: "(1) the newly asserted theory involves only a question of law arising on proved or admitted facts . . . ; (2) consideration of the theory is necessary to serve the ends of justice or to prevent [a] denial of fundamental rights"; or (3) the district court's judgment is correct for the wrong reason. *State v. Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). But "'[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, [this court has] no obligation to do so.' [Citations omitted.]" *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

The right to a jury trial is a fundamental right under both section 5 of the Kansas Constitution Bill of Rights and under the Sixth Amendment to the United States Constitution. *State v. Rizo*, 304 Kan. 974, 979-80, 377 P.3d 419 (2016). We elect to reach both questions under the second exception.

ANALYSIS

Our analysis first looks at the statutes which make up the "restitution scheme" being challenged by Arnett. K.S.A. 2017 Supp. 21-6604(b)(1) grants a district court the authority to order the defendant to pay restitution as part of the sentence. The statute dictates that the restitution amount "shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable."

In the same way, K.S.A. 2017 Supp. 21-6607(c)(2) gives the district court the authority to order restitution payments as a condition of probation. Based on the clear language of the statutes, "'restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages.' [Citations omitted.]" *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015).

*Criminal restitution does not violate the Sixth Amendment to the United States Constitution.*

*Standard of review*

Determining a statute's constitutionality is a question of law subject to unlimited review. *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

5

*Discussion*

We begin with Arnett's argument that the restitution statutes in question offend her right to a jury trial under the Sixth Amendment to the United States Constitution.

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The Supreme Court of the United States has established that this right to a jury covers any fact which increases the maximum penalty for a crime—other than a prior conviction—and such facts must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The Supreme Court further established that any facts which increase a mandatory *minimum* penalty must also be decided by a jury. See *Alleyne v. United States*, 570 U.S. 99, 102, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The reasoning is that when "a judge inflicts punishment that the jury's verdict alone does not allow," the judge has exceeded his authority. *Blakely v. Washington*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Arnett is not the first defendant to make the argument that judicially ordered restitution violates *Apprendi* and its progeny, but most federal courts confronted with the question disagree. Largely, these courts have followed one of two analytical paths to conclude either that criminal restitution is not punishment or to find that restitution statutes do not specify a maximum award. See *United States v. Bonner*, 522 F.3d 804, 807 (7th Cir. 2008) (restitution is not a criminal punishment); see also *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016) (restitution is considered punishment but is not affected by *Apprendi* because statutes do not specify a statutory maximum). Sometimes the courts have taken a more hybrid approach. See *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (restitution is only punishment in some contexts but is "not

6

clearly" punishment covered by *Apprendi*); *United States v. Leahy*, 438 F.3d 328, 338 (3d Cir. 2006) (Although restitution is criminal punishment, its essence is a restorative remedy that compensates victims and does not make a defendant's punishment more severe.).

As our own Court of Appeals has recently pointed out, at least 11 of 13 federal United States Circuit Courts of Appeal have refused to extend *Apprendi* and its progeny to orders of restitution, not to mention the many state courts which have followed suit. *State v. Robison*, 58 Kan. App. 2d 380, 389-90, 469 P.3d 83, *rev. granted* 312 Kan. 900 (2020). Following that lead, the Kansas Court of Appeals has also declared criminal restitution non-punishment for Sixth Amendment purposes. *Robison*, 58 Kan. App. 2d at 392; *State v. Huff*, 50 Kan. App. 2d 1094, 1100, 336 P.3d 897 (2014).

Outside the context of this question, this court has previously acknowledged that restitution serves many purposes separate from criminal punishment, including victim compensation, deterrence, and rehabilitation of the guilty. *State v. Applegate*, 266 Kan. 1072, 1075, 976 P.2d 936 (1999).

Despite the nonuniform approach taken by federal circuits, the Supreme Court has remained silent on whether criminal restitution triggers the right to a jury as contemplated in *Apprendi*, even when presented with opportunities to take up the question. See *United States v. Green*, 722 F.3d 1146 (9th Cir.), *cert. denied* 571 U.S. 1025 (2013); *United States v. Day*, 700 F.3d 713 (4th Cir. 2012), *cert. denied* 569 U.S. 959 (2013).

The Supreme Court once again denied a petition for a writ of certiorari in a case that would have answered that question in *Hester v. United States*, 139 S. Ct. 509, 202 L. Ed. 2d 627 (2019). But this time, Justice Gorsuch—joined by Justice Sotomayor— dissented from the denial of certiorari, arguing that under either analytical path,

7

restitution is within reach of the Sixth Amendment's protections and should trigger the right to a jury trial. *Hester*, 139 S. Ct. at 511 (Gorsuch, J., dissenting).

Although this two-justice dissent might signal that the Supreme Court will eventually take up the question, the majority has thus far been content to allow the lower courts to continue ruling that restitution does not implicate a defendant's Sixth Amendment right to a jury. We see no reason why we should take up that mantle in its place. While the dissent observes that the theoretical bases upon which the various circuit courts relied are not uniform, we need not resolve these differences here. We are content to side with the majority of the circuit courts of appeal.

*The current structure of criminal restitution violates section 5 of the Kansas Constitution Bill of Rights but is remedied by severance.*

Next, we turn to the question of whether the Kansas criminal restitution statutes violate section 5 of the Kansas Constitution Bill of Rights.

*Standard of review*

As noted above, a statute's constitutionality is a question of law subject to unlimited review. *Soto*, 299 Kan. at 121.

*Discussion*

Section 5 of the Kansas Constitution Bill of Rights states that "[t]he right of trial by jury shall be inviolate." Citing *Miller v. Johnson*, 295 Kan. 636, 289 P.3d 1098 (2012), a plurality of this court declared "'[s]ection 5 preserves the jury trial right as it historically existed at common law when our state's constitution came into existence'" in

8

1859. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133, 442 P.3d 509 (2019). A majority of this court has ruled the "right as it historically existed" protects as inviolate *at least* the procedural right to have a jury decide the contested questions juries historically decided. *Hilburn*, 309 Kan. at 1133 (plurality holding that "[s]ection 5 preserves the jury trial right as it historically existed at common law"); *Hilburn*, 309 Kan. at 1151 (Stegall, J., concurring) (stating that the "section 5 'right of trial by jury' that 'shall be inviolate' is a procedural right").

Consequently, we begin our analysis of the section 5 challenge with whether territorial juries would have decided the issue of criminal restitution in 1859. If so, under *Hilburn*, section 5 would clearly apply, requiring juries also to decide it now. See *Hilburn*, 309 Kan. at 1134. On the other hand, if judges decided the issue of criminal restitution in 1859, section 5 would not apply.

Were it so easy. Unfortunately, the concept of criminal restitution as we know it today was not part of the common law at all in 1859. Since it did not exist, it follows that it could not have been decided by juries *or* judges.

So we explore further. At common law, a victim would have been able to recover damages caused by a criminal act through civil suit with a finding of causation and damages. Civil defendants in those actions had a right to demand a jury trial. There is no dispute that the amount of damages—and causation—was a question of fact to be determined by the jury in common-law tort actions. *Miller*, 295 Kan. at 647; see *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989). Consequently, Arnett would have us find that because criminal restitution orders now allow those same crime victims to be compensated for losses just as if they were successful tort plaintiffs, criminal defendants should enjoy that same right to a jury trial.

This court has consistently noted that when the section 5 jury trial right is implicated, it applies no further than to give the right of such trial upon issues of fact so tried at common law. The right to have the jury determine issues of fact is contrasted with the determination of issues of law, which have always been left to the court. See *State v. Love*, 305 Kan. 716, 735, 387 P.3d 820 (2017) (citing General Laws of the Territory of Kansas, 1859, ch. 25, § 274 ["[I]ssues of law must be tried by the court. . . . Issues of fact arising in action, for the recovery of money, or of specific, real or personal property, shall be tried by a jury."]). Therefore, Arnett's argument hinges on analogizing modern criminal restitution to causation and damages in a civil suit.

The panel disagreed with Arnett, finding that orders of criminal restitution do not legally supplant civil actions, because a crime victim may still file a civil suit against a criminal defendant to recover money damages. *State v. Arnett*, No. 112,572, 2018 WL 2072804, at *1 (Kan. App. 2018) (unpublished opinion).

Likewise, the Court of Appeals panel in *Robison* was faced with the same argument—analogizing criminal restitution orders to causation and civil damages in tort—and came to the same conclusions as the *Arnett* panel: as distinct remedies, criminal restitution is not a civil judgment and is therefore not covered by section 5. *Robison*, 58 Kan. App. 2d at 386.

But the *Robison* panel was faced with another argument. The defendant in *Robison*, taking a deep dive into our state's history, argued that not only did Kansas juries decide the amount of civil damages in tort prior to statehood, but juries were also required to determine the value of stolen property for certain theft offenses in criminal cases. See Kan. Terr. Stat. 1859, ch. 25, § 274; Kan. Terr. Stat. 1859, ch. 27, § 219. The defendant in *Robison* argued that, by analogy, Kansas juries *would* have had to determine

the amount of criminal restitution in 1859 because it is yet another example of juries determining the amount of loss or damage caused to a victim.

The majority of the *Robison* panel was not persuaded, instead turning to the State's rebuttal that the reason juries had to make a factual finding regarding the value of stolen property was because that factual determination affected the severity level of the offense. See Kan. Terr. Stat. 1859, ch. 28, §§ 72-74, 82-88, 91. The *Robison* majority maintained that because criminal restitution is not a civil remedy—and criminal restitution was not listed in the Kansas territorial statutes as a permissible remedy for any crime in 1859— the defendant failed to establish that section 5 would require a jury to impose criminal restitution under K.S.A. 2017 Supp. 21-6604(b)(1) and K.S.A. 2017 Supp. 21-6607(c)(2). 58 Kan. App. 2d at 386. We agree with this assessment. Moreover, we note that the territorial statutes contained no mechanism by which an aggrieved victim could obtain recompense for the value of stolen goods, as determined by a jury in a criminal trial; that recovery, if any, would flow only through a civil proceeding—including, potentially, a trial by jury.

Both appellate panels ultimately disagreed with their respective defendants. The *Robison* panel relied on this court's precedent that made clear that criminal restitution and civil damages are separate and independent remedies under Kansas law. *Robison*, 58 Kan. App. 2d at 385-86; see *Applegate*, 266 Kan. at 1078. Because they are distinct remedies,

> "[t]he judge's order of restitution in a criminal action does not bar a victim from seeking damages in a separate civil action. Likewise, the judge, when sentencing a defendant in a criminal action, is not foreclosed from ordering restitution just because the victim has received compensation in a civil action." *Applegate*, 266 Kan. at 1079.

11

When framed as two unique avenues to recovery—with separate standards and implications—it would follow that criminal restitution does not trigger the same protections afforded to defendants in civil actions.

Then what, one may ask, is the difference? While many legal scholars and editors have weighed in on the subject, the following is one explanation that can be used to understand this court's holding in *Applegate*.

"Criminal restitution is not the equivalent of civil damages. The criminal sanction of restitution and the civil remedy of damages further distinct societal goals. . . . Unlike a civil claim for damages, the purpose of restitution in a criminal case is twofold: (1) to compensate the victim and (2) to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system. The restitution order has complications and effects which the ordinary civil money judgment lacks. It necessarily holds incarceration over the head of the defendant like a sword of Damocles to enforce payment in a way that civil judgments cannot.

. . . .

". . . A final judgment in a civil case speaks instantly; it fixes the amount due and compensates a plaintiff for a delay in payment by including an award of post-judgment interest. . . . [T]he award of restitution can include installment payments enforceable as a condition of probation—a remedy not available in a civil lawsuit.

"Another difference between restitution and civil damages is that the State is a party to the case and, consistent with the twofold purpose of restitution, while the victim's wishes concerning restitution are relevant, they are not dispositive—it is the judge, not the victim, who must weigh society's competing needs and make the determination of whether or not restitution will be imposed and, if so, to what extent. It is for this reason that a defendant cannot foreclose restitution in a criminal case through execution of a release of liability or satisfaction of payment by the victim.

12

"Criminal restitution is rehabilitative because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty affects the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine. Restitution is also retributive, particularly in cases of theft or fraudulent conduct, in that it seeks to take ill-gotten gains from the defendant." Criminal restitution and civil damages, 16 Fla. Prac., Sentencing § 10:3 (2020-2021 ed.).

Thus, unlike the dissent, we cannot agree that criminal restitution and civil actions are merely "separate procedures for obtaining the same remedy—making a party whole." But we also cannot ignore the development of the modern criminal restitution statutes which are confronting Arnett. These statutes include several relevant provisions that did not exist or that the court did not have cause to consider at the time of *Applegate*. K.S.A. 2017 Supp. 21-6604(b)(2) states that the order of restitution shall be a judgment against the defendant that may be collected by the court by garnishment or other execution as on judgments in civil cases. Likewise, K.S.A. 2017 Supp. 22-3424(d)(1) states that the order of restitution shall be enforced as a judgment, specifically pursuant to K.S.A. 60-4301 through K.S.A. 60-4304, all of which make criminal restitution virtually identical to a civil judgment. K.S.A. 60-4301 states in pertinent part,

"The clerk of the district court shall record the judgment of restitution in the same manner as a judgment of the district court of this state pursuant to the code of civil procedure. A judgment so filed *has the same effect* and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and *may be enforced or satisfied in like manner*, except a judgment of restitution shall not constitute an obligation or liability against any insurer or any third-party payor." (Emphases added.)

As shown from the plain text, the only difference enumerated in the statute between civil judgments and orders of restitution is that orders of restitution are not enforceable against insurers or any third-party payor. This is simply not enough to differentiate the two remedies. Regarding K.S.A. 60-4302 through K.S.A. 60-4304, all presume an order of criminal restitution will be filed and enforced as a civil judgment.

Although K.S.A. 60-4301 was in effect at the time of *Applegate*, that court did not address it—or its section 5 implications—because it was not necessary to resolve the issues in that case. However, when the *Applegate* court stated "[r]estitution imposed as a condition of probation is not a legal obligation equivalent to a civil judgment, but rather an option which may be voluntarily exercised by the defendant to avoid serving an active sentence," it directly cited a Court of Appeals case which was decided *before* K.S.A. 60-4301 was enacted. *Applegate*, 266 Kan. at 1075 (citing *Church Mut. Ins. Co. v. Rison*, 16 Kan. App. 2d 315, 318, 823 P.2d 209 [1991]).

In the days before these statutes, it was true that criminal restitution was not a legal obligation equivalent to a civil judgment, for all the reasons explained above. The *Rison* case cited by the *Applegate* court demonstrates that very well from a practical, as opposed to theoretical, point of view. There, the defendant was ordered to pay criminal restitution as a condition of his probation. After his discharge from probation—and after the statute of limitations for a civil action had run—he ceased making restitution payments. Because restitution and civil actions were truly separate remedies at the time, the insurance company was barred by the statutes of limitation from pursuing a civil action and the defendant's payment of restitution during his probation did nothing to toll that applicable statute of limitations. See *Rison*, 16 Kan. App. 2d at 320.

But in the framework of our *current* criminal restitution statutes, we cannot continue to say that restitution is not equivalent to civil judgments, at least to the level

14

that—if left untouched—it would implicate the right to a jury under section 5. The district court is now required to order the defendant to pay restitution which includes, but is not limited to, damage or loss caused by the defendant's crime, as determined by that judge. See K.S.A. 2020 Supp. 21-6604(b); K.S.A. 2020 Supp. 21-6607(c)(2). As established above, once the judge decides the amount of loss to the victim proximately caused by the defendant's crime, that award becomes a civil judgment, which may be enforced the same as any other civil judgment. K.S.A. 2017 Supp. 21-6604(b)(2); K.S.A. 60-4301. By allowing the judge to determine the legal damages proximately caused by the crime, rather than a jury, and then converting that determination into a civil judgment for the victim, the statutory scheme bypasses the traditional function of the jury to determine civil damages, thereby implicating section 5. See *Missouri, K. & T.R. Co. v. L.A. Watkins Merch. Co.*, 76 Kan. 813, 815, 92 P. 1102 (1907) (existence and extent of injury caused by defendant are questions of fact to be determined by a jury). More so, unlike most other civil judgments, a modern judgment for restitution never becomes dormant. See K.S.A. 2020 Supp. 60-2403(b).

So what is the remedy for judicially determined restitution under our current statutory scheme? Arnett suggests it must be to vacate her order of restitution because it was determined by a judge and not a jury. But her preferred remedy goes too far. Although the development of criminal restitution as a full-fledged and unhindered civil judgment is concerning to the validity of any order of restitution, we do not find that it necessitates invalidating every order of restitution made by a district court outside the purview of a jury. To do so would be to blindly disregard every valid justification in those rulings for having a separate avenue to recovery for crime victims. It would also ignore an effective, but more focused, solution.

When confronting a constitutional flaw in a statute, we will resolve the problem, if possible, by severing the problematic portions and leaving the remainder intact.

15

"Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that (1) the act would have been passed without the objectionable portion and (2) if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent." *Gannon v. State*, 304 Kan. 490, 491, 372 P.3d 1181 (2016).

We acknowledge that this solution is not always possible, and this court has, in the past, declared entire acts void after we were unable to sever the unconstitutional provision from its companions. See *Gannon,* 304 Kan. at 520 (citing *State ex rel. v. Hines*, 163 Kan. 300, 322, 182 P.2d 865 [1947]; *Sedlak v. Dick*, 256 Kan. 779, 803-04, 887 P.2d 1119 [1995]; *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1023, 850 P.2d 773 [1993]; and *Boyer v. Ferguson*, 192 Kan. 607, 389 P.2d 775 [1964]). But we find no such hindrances here.

If we use precision to sever the problematic statutory language from the rest of the Kansas criminal restitution statutes and invalidate only those portions making orders of restitution civil judgments, it preserves the societal goals advanced by a judicial sanction of restitution within the context of a criminal case without infringing on a defendant's— or a victim's—right to a jury trial in a civil setting. Because these goals are still advanced without the offending portions of the statute, the remainder has satisfied the "*Gannon* test" and may stand.

Accordingly, we hold the following statutes or portions of statutes to be unconstitutional and sever them:

16

K.S.A 60-4301, which establishes that an order of restitution shall be filed, recorded, and enforced as a civil judgment, in its entirety;

K.S.A. 60-4302, which sets forth notice requirements when an order of restitution is filed as a civil judgment, in its entirety;

K.S.A. 60-4303, which establishes the docket fee when filing an order of restitution as a civil judgment, in its entirety;

K.S.A. 2020 Supp. 21-6604(b)(2), which dictates that if the court orders restitution, the restitution shall be a judgment against the defendant that may be collected by the court by garnishment or other execution as on judgments in civil cases in accordance with K.S.A. 60-4301 et seq.; and

Finally, only the last sentence of K.S.A. 2020 Supp. 22-3424(d)(1) which reads, "If the court orders restitution to be paid to the victim or the victim's family, the order shall be enforced as a judgment of restitution pursuant to K.S.A. 60-4301 through 60-4304, and amendments thereto."

Further explanation of our decision to sever the entirety of K.S.A. 2020 Supp. 21-6604(b)(2) is in order. This subsection refers to the court's ability to order collection of restitution by "garnishment or other execution." It, in part, demonstrates the court's flexibility when it comes to enforcing orders of criminal restitution. That alone would not offend section 5. The problem with the statute is that, as worded, it is too difficult to uncouple the acceptable provisions from those provisions that violate section 5. Thus, it is necessary to sever the entire subsection. We recognize that a court may still enforce its order of criminal restitution through lawful means if the court has cause to believe a defendant is not in compliance. Those means still include the potential for court-ordered

17

garnishment. And the defendant still retains the ability to object to such garnishment and justify why garnishment is not appropriate, i.e., to show the court how he is taking reasonable steps to comply with the restitution order.

With today's holding, restitution may still be imposed by a judge either as part of the sentence—as contemplated by K.S.A. 2020 Supp. 21-6604(b)—or as a condition of probation—as contemplated by K.S.A. 2020 Supp. 21-6607(c)(2).

However, a criminal defendant will not be faced with a civil judgment for restitution unless it has been obtained separately through a civil cause of action. In this way, criminal restitution is—once again—not a legal obligation equivalent to a civil judgment and does not violate section 5.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

\* \* \*

STANDRIDGE, J., dissenting: I dissent from the majority's holding that Kansas' restitution statutes do not violate a criminal defendant's right to a jury trial under the Sixth Amendment to the United States Constitution. I also dissent from the majority's holding that portions of our restitution statutes may be severed to avoid offending a criminal defendant's right to a jury trial under section 5 of the Kansas Constitution Bill of Rights. For the reasons set forth below, I would hold that Taylor Arnett had a right under both the Sixth Amendment and section 5 to have a jury determine the amount of damage or loss caused by her crime.

A. *Sixth Amendment*

The Sixth Amendment provides a right to a jury trial in all criminal prosecutions. In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court established a rule to enforce that right: "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Arnett claims that the Kansas restitution statutes violate the *Apprendi* rule because they allow judges, not juries, to make the underlying findings of fact needed to award restitution. The State responds with two arguments: (1) the Sixth Amendment does not apply because restitution is not punishment, and (2) even if restitution is punishment, having the judge instead of the jury make findings of fact to support the court's restitution order does not violate *Apprendi* because restitution does not increase the statutory maximum penalty for Arnett's offense.

The majority does not engage in a substantive analysis of the Sixth Amendment issue. Instead, it summarily concludes that Kansas' restitution scheme does not violate the Sixth Amendment because the United States Supreme Court has been silent on the issue and the decisions of a majority of the federal circuits and many state courts find the Sixth Amendment inapplicable to restitution. Because a substantive analysis is critical to deciding the issue here, I will begin with that analysis, considering both of the State's arguments, and then address the majority's summary reliance on the cited caselaw.

1. *The Sixth Amendment applies*

The State first argues that restitution does not trigger an *Apprendi* analysis. It relies on an argument that restitution is not punishment. It asserts that, instead, restitution is like damages in a civil case because it is designed to compensate victims of the

19

defendant's crime. The State's view that the Sixth Amendment is inapplicable conflicts with the text of the Sixth Amendment, the historical record, and *Apprendi'*s progeny.

To begin, the State's position is at odds with the language in the Sixth Amendment. The Sixth Amendment right to a jury trial applies in "all criminal prosecutions." U.S. Const. amend VI. Restitution is part of the criminal prosecution because it is part of the defendant's sentence. *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). The Sixth Amendment's text supports Arnett's position that *Apprendi* applies to restitution.

And so does the historical record, which is the touchstone of the *Apprendi* rule. Courts applying that rule must consider "whether the finding of a particular fact was understood as within 'the domain of the jury . . . by those who framed the Bill of Rights.'" *Oregon v. Ice*, 555 U.S. 160, 168, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). Courts must do so because the scope of the jury-trial right is "informed by the historical role of the jury at common law." 555 U.S. at 170. The historical record on the jury's role in deciding restitution is clear.

In England, the facts needed to support the earliest examples of restitution had to be alleged in the complaint or found by the jury. In a victim-initiated prosecution called an "appeal of felony," a larceny victim could retake stolen property by identifying it in the complaint and having the jury determine who owned it. Note, *Guarding the Rights of the Accused and Accuser: The Jury's Role in Awarding Criminal Restitution Under the Sixth Amendment*, 51 Am. Crim. L. Rev. 463, 472 (2014). Larceny victims also could recover stolen property in an "indictment of felony"—a prosecution brought by the Crown—by filing a writ of restitution that listed the property in the indictment. 51 Am. Crim. L. Rev. at 473-74; see *State v. Ragland*, 171 Kan. 530, 534-35, 233 P.2d 740 (1951). The American experience with restitution flows from this English tradition. Early

American courts allowed restitution for theft offenses if the property was described in the indictment and the jury made a special finding. Statutes provided for restitution, but they also required a description of the property in the indictment and a finding of ownership by the jury. 51 Am. Crim. L. Rev. at 474-75. The colonies, like their English counterparts, required a jury finding about the property described in the indictment before an award of restitution could be made. The State's position cannot be squared with the historical record.

Neither can the State's position be squared with the contemporary *Apprendi* line of cases. In *Southern Union Co. v. United States*, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), the Court applied *Apprendi* to criminal fines. In doing so, the Court saw no reason to treat criminal fines differently from other forms of punishment to which the Sixth Amendment applies:

> "*Apprendi's* 'core concern' is to reserve to the jury 'the determination of facts that warrant punishment for a specific statutory offense.' That concern applies whether the sentence is a criminal fine or imprisonment or death. Criminal fines, like these other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses. . . . In stating *Apprendi's* rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines. [Citations omitted.]" 567 U.S. at 349-50.

Based on this analysis, the *Southern Union* Court held that criminal fines were subject to *Apprendi* because they were indistinguishable from other punishments covered by *Apprendi.*

The same can be said about restitution. Like a criminal fine, restitution is a penalty imposed by the State against a defendant for committing an offense. And punitive

consequences attach to the failure to pay restitution, just like they do to the failure to pay criminal fines. Lollar, *What Is Criminal Restitution?* 100 Iowa L. Rev. 93, 123-30 (2014) (describing restitution's punitive characteristics). Granted, restitution and criminal fines are different in some ways. For example, a defendant pays a fine to the government but pays restitution to the victim. But those differences did not stop the United States Supreme Court from comparing the two under the Eighth Amendment's Excessive Fines Clause. *Paroline v. United States*, 572 U.S. 434, 456, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014). And they should not stop this court from finding that *Apprendi* applies to restitution for all the same reasons it applied to criminal fines in *Southern Union.*

My conclusion in this regard is unaffected by the fact that one of restitution's purposes is to compensate crime victims. There is no question that restitution serves a compensatory purpose, but that is not all it does—it also serves "functions of deterrence and rehabilitation of the guilty." *State v. Applegate*, 266 Kan. 1072, Syl. ¶ 2, 976 P.2d 936 (1999). Those are two "principal rationales" from which the government derives its power to punish. *Hall v. Florida*, 572 U.S. 701, 708, 134 S. Ct. 1986, 188 L. Ed. 2d 1007 (2014) (discussing justifications for punishment under the Eighth Amendment). So, it is no surprise that the United States Supreme Court has recognized that restitution awarded under federal statutes is a form of punishment. *Paroline*, 572 U.S. at 456 (while restitution "is paid to a victim, it is imposed by the Government 'at the culmination of a criminal proceeding and requires conviction of an underlying' crime. Thus, despite the differences between restitution and a traditional fine, restitution still implicates 'the prosecutorial powers of government.' [Citations omitted.]"); *Pasquantino v. United States*, 544 U.S. 349, 365, 125 S. Ct. 1766, 161 L. Ed. 2d 619 (2005) ("The purpose of awarding restitution in this action is not to collect a foreign tax, but to mete out appropriate criminal punishment for that conduct.").

Having concluded that the text of the Sixth Amendment, the historical record, and the Supreme Court's decision in *Southern Union* all support a holding that the Sixth Amendment applies to restitution, I turn to the State's alternative argument.

2. *Applying* Apprendi: *restitution increases the maximum punishment*

The State's second claim is that even if the Sixth Amendment applies to restitution awards, there is no *Apprendi* violation in this case because the court's order of restitution did not increase the statutory maximum sentence for Arnett's crime. The State is arguing that because the Legislature has not set statutory maximums for the amount of restitution a judge can order, there can be no *Apprendi* violation.

The State twists the *Apprendi* holding. In *Apprendi*, the Court held that juries must decide any facts that are to be used to enhance the "statutory maximum" sentence of a crime. The "statutory maximum" refers to "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In other words, the Sixth Amendment limits the sentencing judge to the maximum punishment the Legislature permits for a crime of which the jury has found the defendant guilty or to which the defendant has admitted. If anything is to be added to the sentence beyond that statutory maximum, the jury needs to make additional factual findings that will permit such an addition. The Court applied this same definition again in *Southern Union*. See 567 U.S. at 348.

Given this definition, the Kansas restitution scheme necessarily permits an increase to the statutory maximum of a defendant's sentence because K.S.A. 2017 Supp. 21-6604(b)(1) and 21-6607(c)(2) give judges discretion to impose restitution amounts if the *judge* determines the crime caused damage or loss—regardless of whether the jury

23

made this finding. Because the jury in Arnett's case made no finding on the amount of damage that Arnett caused, the imposition of restitution based on the judge's finding violated the *Apprendi* prohibition.

In concluding restitution can never run afoul of *Apprendi*, the Court of Appeals panel reasoned that these statutes do not impose a specific maximum amount and will vary on a case-by-case basis depending on a victim's loss. *State v. Arnett*, No. 112,572, 2018 WL 2072804, at *2-3 (Kan. App. 2018) (unpublished opinion). In doing so, it attempted to distinguish restitution from the criminal fine issue discussed in *Southern Union* because fines have fixed statutory maximums.

The panel made the same mistake that the State does. The underlying premise employed by the panel—that there is no *Apprendi* violation if there is no statutory maximum on additional punishment—is wrong. Furthermore, the majority's attempt to paint restitution as significantly different from fines misses the mark. The Court in *Southern Union* was considering legislation that authorized indeterminate criminal fines. The relevant statute permitted a fine of up to $50,000 for each day a company violated a certain federal statute. To determine the appropriate fine to impose, the judge had to determine the number of days the company violated the federal statute. So, the judge had to make an additional factual finding: the length of the violation. The United States Supreme Court ruled that *any* fact used to calculate a fine—including the amount of the defendant's gain or the victim's loss—was therefore violative of the *Apprendi* rule. *Southern Union*, 567 U.S. at 349-50.

The same logic undoubtedly applies to indeterminate restitution statutes like the ones at issue here. Like criminal fines, the court orders a defendant to pay restitution, which includes, but is not limited to, damage or loss caused by the defendant's crime. See

24

K.S.A. 2017 Supp. 21-6604(b)(1). In both situations, a judge must make a factual finding that increases the punishment beyond the amount a jury or plea agreement authorize.

Because restitution is punishment and because Kansas' restitution scheme increases the statutory maximum penalty a judge can impose, I would hold that the Sixth Amendment applies and that the scheme violates the rule announced in *Apprendi*.

3. *The majority's reasoning is flawed*

I now turn to the majority's reasoning that the Kansas restitution scheme does not violate the Sixth Amendment because (a) the United States Supreme Court remains silent on the issue and recently denied a petition for certiorari arguing the same; and (b) the majority of federal circuits and many state courts have refused to extend *Apprendi* to restitution orders.

a. *The Supreme Court's silence tells us nothing*

In finding that the Sixth Amendment and the rule in *Apprendi* do not apply to restitution, the majority cites to the United States Supreme Court's silence on the issue. Slip op. at 8. Specifically, the majority cites to two cases from eight years ago when the Court denied certiorari when the issue was presented. Slip op. at 7 (citing *United States v. Green*, 722 F.3d 1146 [9th Cir.], *cert. denied* 571 U.S. 1025 [2013]; *United States v. Day*, 700 F.3d 713 [4th Cir. 2012], *cert. denied* 569 U.S. 959 [2013]). The majority also cites to the Court's recent denial of a petition for certiorari on the issue in *Hester v. United States*, 139 S. Ct. 509, 202 L. Ed. 2d 627 (2019). The majority construes these denials to mean that the Court "has thus far been content to allow the lower courts to continue ruling that restitution does not implicate a defendant's Sixth Amendment right to a jury."

Slip op. at 8. Because of this, the majority declines to address the issue further, opting instead to side with the majority of federal circuits on the matter.

However, as the United States Supreme Court has long held, "[Denial of a petition for certiorari] simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter 'of sound judicial discretion.'" *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917, 70 S. Ct. 252, 94 L. Ed. 562 (1950). There are myriad reasons why the Court may refuse to take up an issue, including, but not limited to: narrow technical reasons, various procedural bars, lack of finality, the judgment does not come from the state court of last resort, a decision may be supportable as a matter of state law but not be subject to review, or an insufficient record. 338 U.S. at 917-18. A denial of a petition for certiorari in no way implies approval or disapproval of a lower court's decision. 338 U.S. at 919. In my view, the majority reaches the wrong conclusion about what the denial in these cases means and accordingly circumvents the Sixth Amendment analysis necessary to resolve the issue presented.

### b. Other caselaw is unreliable

This brings us to the majority's second justification for its decision: that 11 of 13 federal circuits and many state courts have held that *Apprendi* should not be extended to restitution orders. Specifically, the majority sees no reason to engage in a substantive analysis and remains "content to side with the majority of the circuit courts of appeal." Slip op. at 8. I disagree with this approach.

In looking to the federal circuits, six of these courts either (1) fail to analyze *Southern Union* and how it may affect the analysis, (2) only cursorily do so, or (3) incorrectly do so. Six other circuits conclude that *Apprendi* does not apply strictly because there is no statutory maximum provided in the restitution statutes—it is tied to

26

the full amount of a victim's loss. *United States v. Vega-Martinez*, 949 F.3d 43, 54-55 (1st Cir. 2020); *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016); *United States v. Bengis*, 783 F.3d 407, 411-13 (2d Cir. 2015); *United States v. Rosbottom*, 763 F.3d 408, 420 (5th Cir. 2014); *Day*, 700 F.3d at 732; *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006). Furthermore, at least two circuits definitively state that *Apprendi* should not apply because restitution is not punishment, rather it is a civil remedy. *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015); *United States v. Wolfe*, 701 F.3d 1206, 1216-17 (7th Cir. 2012); but cf. *United States v. Ross*, 279 F.3d 600, 609 (8th Cir. 2002) (Eighth Circuit previously concluded that restitution is punishment, but the restitution statutes do not set a statutory maximum to exceed). Yet two other circuits find that *Apprendi* does not apply because of a combination of the above theories:  restitution may not be a punishment, and even if it were, the restitution statutes set no statutory maximum. *United States v. Burns*, 800 F.3d 1258, 1261-62 (10th Cir. 2015); *United States v. Green*, 722 F.3d 1146, 1149-50 (9th Cir.), *cert. denied* 571 U.S. 1025 (2013). The Ninth Circuit explicitly acknowledges in its opinion that its prior precedent is not "well-harmonized with *Southern Union*," and had that opinion come down before the court's previous cases, the court may have ruled differently. *Green*, 722 F.3d at 1151. And one other circuit explains its holding this way:  *Apprendi* does not apply because there is no statutory maximum and while restitution is punishment, it does not act as a severe increase to a defendant's sentence. In other words, it *is* punishment, but it is not punishment enough for the Sixth Amendment to apply. *United States v. Leahy*, 438 F.3d 328, 335-38 (3d Cir. 2006).

When we look to the state cases the majority relies upon, a similar pattern emerges. To be clear, 16 other state courts conclude that *Apprendi* does not extend to restitution orders. However, only seven of these cases are state supreme court opinions, five of which were handed down before *Southern Union*. Almost all these cases provide no real analysis of the issue, instead basing their holdings on the various rationales of the

federal circuit courts. And just like their federal counterparts, these state supreme courts rely on varying rationales in rejecting application of *Apprendi*. One state supreme court finds that *Apprendi* is inapplicable because there is no statutory maximum. *State v. Kinneman*, 155 Wash. 2d 272, 282, 119 P.3d 350 (2005). Two state supreme courts conclude that restitution simply is not punishment, precluding application of the Sixth Amendment jury-trial right. *Prickett v. State*, 856 N.E.2d 1203, 1210 (Ind. 2006); *State v. Field*, 328 Mont. 26, 32, 116 P.3d 813 (2005). One court rejects application because there is no statutory maximum and restitution is not analogous to the kind of sentencing enhancement factors conceived of in *Apprendi*. *People v. Horne*, 97 N.Y.2d 404, 414-15, 767 N.E.2d 132, 740 N.Y.S.2d 675 (2002). One court explains that while restitution is punishment, *Apprendi* cannot apply because there is no statutory maximum. *State v. Clapper*, 273 Neb. 750, 755-59, 732 N.W.2d 657 (2007). Yet another court holds that restitution is not punishment and that lack of a statutory maximum precludes application of *Apprendi*. *Commonwealth v. Denehy*, 466 Mass. 723, 736-38, 2 N.E.3d 161 (2014). The most interesting rationale comes from the California Supreme Court, which recognized that *Apprendi* may apply to the state's restitution scheme but only in situations where the trial court is trying to determine whether "compelling and extraordinary reasons" exist to *not* impose restitution. *People v. Wall*, 3 Cal. 5th 1048, 1075-76, 404 P.3d 1209, 224 Cal. Rptr. 3d 861 (2017).

The remaining state cases are appellate court opinions, a handful of which are unpublished and have no precedential value and most of which simply rely on other courts' findings with little to no additional analysis. And like those other courts, these courts vary in their reasoning for rejecting the *Apprendi* argument. See *State v. Leon*, 240 Ariz. 492, 495-96, 381 P.3d 286 (Ct. App. 2016) (*Apprendi* does not apply to restitution because restitution is not punishment, and even if it was, there is no statutory maximum); *People v. Smith*, 181 P.3d 324, 327 (Colo. App. 2007) (*Apprendi* does not apply to restitution because there is no statutory maximum); *People v. Foster,* 319 Mich. App.

28

365, 389, 901 N.W.2d 127 (2017) (*Apprendi* does not apply to restitution because restitution is not punishment); *State v. Maxwell*, 802 N.W.2d 849, 851 (Minn. Ct. App. 2011) (*Apprendi* does not apply to restitution because there is no statutory maximum); *State v. Martinez*, 392 N.J. Super. 307, 315-18, 920 A.2d 715 (2007) (*Apprendi* does not apply because restitution is capped at victim's total loss, which trial court cannot exceed); *State v. Deslaurier*, 277 Or. App. 288, 295, 371 P.3d 505 (2016) (same); *State v. Foumai*, No. CAAP-17-0000093, 2018 WL 495679, at *4 (Haw. Ct. App. 2018) (unpublished opinion) (*Apprendi* does not apply to restitution because there is no statutory maximum); *Commonwealth v. Getz*, No. 2153 EDA 2011, 2013 WL 11254781, at *8 (Pa. Super. Ct. 2013) (unpublished opinion) (same).

When viewed collectively, these cases may appear to provide overwhelming support for finding that *Apprendi* does not apply to restitution orders. However, when read individually, these cases fail to provide a consistent or clear rationale for why *Apprendi* should not apply to restitution. Like the majority in this case, many of the courts blindly follow other decisions without any independent analysis of their own. Based on my own independent analysis, I would find the Sixth Amendment applies to restitution orders. Restitution is part of the "criminal prosecution" to which that Sixth Amendment jury trial right attaches. Courts award it in a criminal proceeding as part of a criminal sentence. Imposing it serves punitive aims and not paying it has punitive consequences. Juries, not judges, were historically required to find the amount of restitution based on facts alleged in the indictment. And under *Southern Union*, present-day juries must also decide restitution for the same reasons they must find the facts needed to award criminal fines. For these reasons, I would vacate Arnett's restitution order as violative of the Sixth Amendment.

B. *Section 5*

At the outset, I note that the panel's decision and Arnett's petition for review focused their section 5 analyses on whether the Legislature deprived Arnett of her right to a jury trial by allowing the district court to decide and order restitution without providing a "quid pro quo" or substitute remedy. See *Arnett*, 2018 WL 2072804, at *1-2. After Arnett's petition for review had been granted and while review was pending, however, we issued our decision in *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1135-44, 1150, 442 P.3d 509 (2019) (plurality opinion), in which a majority of this court abrogated the quid pro quo test for section 5 challenges. Because *Hilburn* was filed while review of Arnett's case was pending, we do not apply the quid pro quo test to her section 5 claim. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013) (change in the law acts prospectively, applying "'to all cases . . . pending on direct review or not yet final'").

Section 5 of the Kansas Constitution Bill of Rights provides that "[t]he right of trial by jury shall be inviolate." Section 5 preserves the jury trial right as it existed at common law in 1859 when the Kansas Constitution was ratified. *Hilburn*, 309 Kan. at 1133-34; 309 Kan. at 1151 (Stegall, J., concurring). Thus, section 5 only applies if it can be shown that territorial juries would have decided the issue of restitution in 1859. 309 Kan. at 1133-34.

The majority finds that the concept of criminal restitution was not part of the common law in 1859 and that section 5 is only implicated by our current restitution statutes that equate criminal restitution orders with civil judgments. The majority then finds this unconstitutional infringement on a defendant's right to a jury trial may be remedied by severing certain portions of the restitution statutes.

30

But I would never reach the severance issue because I disagree with the majority's premise that the concept of criminal restitution was not part of the common law in 1859. While the term "restitution" is not found in our common law, Kansas juries in 1859 made factual determinations analogous to the modern-day concept of restitution by deciding (1) damages in civil cases and (2) the value of stolen property in certain types of theft cases.

1. *Civil damages*

Neither judges nor juries could impose restitution in criminal cases in 1859. But Kansas law did guarantee a jury trial on issues of fact arising in a civil action for the recovery of money or property. See Kan. Terr. Stat. 1859, ch. 25, § 274.

The majority maintains that criminal restitution and civil damages are not analogous concepts but are instead separate and independent remedies because a crime victim may recover both restitution and civil damages. See *Applegate*, 266 Kan. at 1078-79. But the majority's argument ignores the fact that a crime victim in 1859 could not. At that time, the only avenue for an aggrieved party to seek compensation for loss due to a defendant's criminal act was to file a civil case against that defendant. In such an action, a civil jury would have decided issues of fact relating to whether the aggrieved party was entitled to a monetary award and the amount of the award, if any. See Kan. Terr. Stat. 1859, ch. 25, § 274. And before 1994, Kansas statutes only authorized criminal restitution as a condition of probation or parole; it was not allowed as part of a defendant's general sentence. Compare K.S.A. 1993 Supp. 21-4603d(a) with K.S.A. 1994 Supp. 21-4603d(a).

Moreover, the concepts of restitution and damages are not so independent as the majority suggests. While they each involve a different process for compensating an aggrieved party for monetary loss caused by a criminal defendant, a party generally cannot recover both restitution and damages for the same loss. See K.S.A. 60-4304(b)

31

(restitution award will reduce a victim's recovery in a later civil case by "the amount of the restitution paid"); K.S.A. 2020 Supp. 21-6604(b)(1) (measure of restitution includes "damage or loss caused by the defendant's crime"); *Applegate*, 266 Kan. at 1080 (civil damage award may be credited against restitution ordered in criminal proceeding). So rather than thinking of restitution and damages as separate remedies, it is more accurate to describe them as separate procedures for obtaining the same remedy—making a party whole. In this way, our criminal restitution statutes serve the same purpose as actions for civil damages did in 1859. Thus, I would find that our restitution statutes violate section 5 by allowing a judge in a criminal case to decide and order restitution based on questions of fact historically reserved for a civil jury.

2. *Stolen property valuation*

In addition to deciding the amount of civil damages, juries in 1859 also were tasked with determining the value of stolen property in criminal cases involving "robbery, theft, fraud, embezzlement, or the like." See Kan. Terr. Stat. 1859, ch. 27, § 219. The jury's property valuation affected the severity of the defendant's punishment. See Kan. Terr. Stat. 1859, ch. 28, §§ 72-74. The jury could specify a punishment in the verdict; if the jury failed to specify an authorized punishment, the judge was required to do so. See Kan. Terr. Stat. 1859, ch. 27, §§ 220-24.

Juries in criminal cases involving theft offenses were required to make a factual finding about the value of the stolen property. This is equivalent to the factual finding a judge makes in determining restitution—whether a defendant's crime caused damage or loss to a victim. And both findings affect the severity of the defendant's sentence. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014) ("Restitution constitutes part of a criminal defendant's sentence."). Because a jury in 1859 would have determined what

amount of damage or loss a criminal defendant caused, our criminal restitution statutes violate a defendant's right to a jury trial under section 5.

In sum, I would find that the Kansas criminal restitution statutes unconstitutionally deprived Arnett of her section 5 right to have a jury determine whether her crime caused damage or loss to a victim because this right existed in 1859.

ROSEN, J., joins the foregoing dissent.